# EX PARTE ARNOT CARTER, Petitioner.

## Division Two, February 4, 1902.

**Habeas Corpus:** GAMING: STATUTORY PROVISION: WITNESS: CONSTITU-
TIONAL RIGHT: INCRIMINATING EVIDENCE. Petitioner for habeas cor-
pus, being sworn as a witness in a prosecution against others for
gambling, was asked if he had not seen the defendants playing cards
for the drinks. He refused to answer the question on the ground
that his answer would lead to evidence which would incriminate
himself; whereupon, the court committed him for contempt. *Held,*
that such commitment was illegal, as infringing petitioner's con-
stitutional right of refusing to give evidence against himself; *and,*
that section 2206, Revised Statutes 1899, providing that no person,
in certain cases, shall be excused from testifying touching any
offense committed by another, violates section 23 of the Bill of Rights,
and is, therefore, unconstitutional and void.

*Habeas Corpus.*

PETITIONER DISCHARGED.

*James Orchard* for petitioner.

The statute under which the petitioner is confined, is in
violation of section 23, article 2, of the Constitution of Mis-
souri, and of the fifth amendment to the Constitution of the
United States. Counselman v. Hitchcock, 142 U. S. 547;
State v. Quarles, 13 Ark. 307; State ex rel. v. Simmons Hdw.
Co., 109 Mo. 118; Ex parte Green, 86 Mo. App. 216.

SHERWOOD, P. J.—This proceeding has been insti-
tuted to test the validity of section 2206, Revised Statutes
1899, which reads this way:

"No person shall be incapacitated or excused from testi-
fying touching any offense committed by another, against any

of the provisions relating to gaming, by reason of his having betted or played at any of the prohibited games or gaming devices, but the testimony which may be given by such person shall in no case be used against him."

It seems that prosecution was begun against W. R. Shuck et al. down in Shannon county for playing "pitch" and "seven-up" for money and drinks. On the trial of that cause, petitioner was sworn as a witness, whereupon the following colloquy ensued between the prosecuting attorney and the witness:

"Q. Are you acquainted with W. R. Shuck? A. Yes, sir.

"Q. I will ask you—he stands charged here with betting on a game of pitch, also on a game of seven-up last July some time. I will ask you to state to the jury if you saw them along about that time playing? A. I must refuse to testify in this case; I am afraid I would incriminate myself.

"Q. I will ask you to state to this jury if you did not, some time within a year prior—some time last July—if they were not over here at this place, and you didn't see them playing pitch for the drinks? A. As I told you before, I refuse to testify on the same grounds.

"Your Honor I insist that the witness answer the questions.

"The Court: Answer the question. A. I refuse to answer the question, because it would lead to evidence which would incriminate myself, or lead to witnesses by whose testimony I would be convicted and would humiliate and degrade me, and if I should give evidence concerning the whole case it would criminate me."

Upon such refusal, the court fined the petitioner for contempt, and ordered him into the custody of the sheriff, in whose custody he now is.

On behalf of his constitutional exemption from being required to answer such questions, petitioner contends that he

did not have to answer them.    The petitioner contends that his confinement is illegal and in violation of section 23 of article 2 of the Constitution of the State of Missouri, which says, "that no person shall be compelled to testify against himself in a criminal cause;" and that said imprisonment is in violation of that part of the fifth amendment to the Constitution of the United States, which says, "nor shall any person be compelled, in any criminal case, to be a witness against himself."

The rulings of various courts have not been uniform on the question here presented; one court and perhaps more holding to the extreme view that only in a criminal case wherein the person sought to be made a witness, was also a party defendant in such case, did the constitutional prohibition apply. Thus, in New York, the Constitution declared that no person shall "be compelled, in any criminal case, to be a witness against himself."    And the act there questioned provided that every person offending against the statute should "be a competent witness against any other person so offending," and might be compelled to give evidence before any magistrate or grand jury, or in any court, in the same manner as other persons, "but the testimony so given shall not be used in any prosecution or proceeding, civil or criminal, against the person so testifying."    A similar provision was contained in chapter 446 of the Laws of 1857, in section 52.    And upon this it was said:    "The term 'criminal case,' used in the clause, must be allowed some meaning, and none can be conceived other than a prosecution for a criminal offense.    But it must be a prosecution against him; for what is forbidden is that he should be compelled to be a witness against himself.    Now if he be prosecuted criminally touching the matter about which he has testified upon the trial of another person, the statute makes it impossible that his testimony given on that occasion should be used by the prosecution on the trial.    It can not, therefore, be said that in such criminal case he has been made a witness against himself, by force of any compulsion used towards him

to procure, in the other case, testimony which can not possibly be used in the criminal case against himself." And thereupon it was ruled that as the witness, Hackley, was not a party defendant to the prosecution, he was compellable to testify before the grand jury. [People v. Kelly, 24 N. Y. 74.]

In Massachusetts, however, the provision of the Constitution was: That no subject shall be "compelled to accuse or furnish evidence against himself." The statute bearing on that subject provided: "No person who is called as a witness before the joint special committee on the state police, shall be excused from answering any question or from the production of any paper relating to any corrupt practice or improper conduct of the state police, forming the subject of inquiry by such committee, on the ground that the answer to such question or the production of such paper may criminate or tend to criminate himself, or to disgrace him or otherwise render him infamous, or on the ground of privilege; but the testimony of any witness examined before said committee upon the subject aforesaid or any statement made or paper produced by him upon such an examination, shall not be used as evidence against such witness in any civil or criminal proceeding in any court of justice." [Acts 1871, ch. 91, sec. 1.]

The witness, Emery, was brought before the joint special committee of the Senate and House and this interrogatory propounded to him: "Have you ever paid any money to any state constable, and do you know of any corrupt practice or improper conduct of the state police? If so, state fully what sums, and to whom, you have thus paid money, and also what you know of such corrupt practice and improper conduct." To this he answered: "I decline to answer the question, upon the grounds, first, that the answer thereto will accuse me of an indictable offense; second, that the answer thereto will furnish evidence against me, by which I can be convicted of such an offense."

For this refusal, he was imprisoned. Being brought be-

fore Judge WELLS on habeas corpus, the case was fully argued, and upon conference with the other judges of the Supreme Judicial Court, and the opinion delivered by Judge WELLS met with the unanimous concurrence of all the judges. In that opinion it is said in regard to the question propounded: "It is apparent that an affirmative answer, to the question put to him, might tend to show that he had been guilty of an offense, either against the laws relating to the keeping and sale of intoxicating liquors, or under the statute for punishing one who shall corruptly attempt to influence an executive officer by the gift or offer of a bribe. [Gen. Stats., ch. 163, sec. 7.]"

Regarding the clause quoted from the bill of rights, the opinion says: "By the narrowest construction, this prohibition extends to all investigations of an inquisitorial nature, instituted for the purpose of discovering crime, or the perpetrators of crime, by putting suspected parties upon their examination in respect thereto, in any manner; although not in the course of any pending prosecution.

"But it is not even thus limited. The principle applies equally to any compulsory disclosure of his guilt by the offender himself, whether sought directly as the object of the inquiry, or indirectly and incidentally for the purpose of establishing facts involved in an issue between other parties. If the disclosure thus made would be capable of being used against himself as a confession of crime, or an admission of facts tending to prove the commission of an offense by himself, in any prosecution then pending, or that might be brought against him therefor, such disclosure would be an accusation of himself, within the meaning of the constitutional provision. In the absence of regulation by statute, the protection against such self-accusation is secured by according to the guilty person, when called upon to answer as a witness or otherwise, the privilege of then avowing the liability and claiming the exemption; instead of compelling him to answer and then excluding his admissions so obtained, when afterwards offered in evidence

against him.   This breach of the constitutional exemption cor-
responds with the common-law maxim *'nemo tenetur seipsum
accusare,'* the interpretation and application of which has al-
ways been in accordance with what has been just stated."

Referring to the expression "or furnish evidence against
himself," the opinion says that this clause must be equally
extensive in its application, and that:   "And, in its interpreta-
tion, may be presumed to be intended to add something to the
significance of that which precedes.   Aside from this consid-
eration, and upon the language of the proposition standing by
itself, it is a reasonable construction to hold that it protects a
person from being compelled to disclose the circumstances of
his offense, the sources from which, or the means by which
evidence of its commission, or of his connection with it, may
be obtained, or made effectual for his conviction, without using
his answers as direct admissions against him.   For all prac-
tical purposes, such disclosures would have the effect to furnish
evidence against the party making them.   They might furnish
the only means of discovering the names of those who could
give evidence concerning the transaction, the instrument by
which a crime was perpetrated, or even the *corpus delicti* it-
self.   Both the reason upon which the rule is founded, and
the terms in which it is expressed, forbid that it should be
limited to confession of guilt, or statements which may be
proved, in subsequent prosecutions, as admissions of facts
sought to be established therein."

Proceeding then to consider the effect of the statute of
Massachusetts already quoted, the opinion says:   "It follows
from the considerations already named, that, so far as this
statute requires a witness, who may be called, to answer ques-
tions and produce papers which may tend to criminate him-
self, and attempts to take from him the constitutional priv-
ilege in respect thereto, it must be entirely ineffectual for
that purpose, unless it also relieves him from all liabilities,

Vol 166 mo—39

for protection against which the privilege is secured to him by the Constitution. The statute does undertake to secure him against certain liabilities, to-wit, the use of any disclosures he may make, as admissions or direct evidence against him, in any civil or criminal proceeding."

Further on, the opinion recurring to the constitutional provision then under consideration, says: "No one can be required to forego an appeal to its protection, unless first secured from future liability, and exposure to be prejudiced, in any criminal proceeding against him, as fully and extensively as he would be secured by availing himself of the privilege accorded by the Constitution. Under the interpretation already given, this can not be accomplished so long as he remains liable to prosecution criminally for any matters or causes in respect of which he shall be examined, or to which his testimony shall relate. It is not done, in direct terms, by the statute in question; it is not contended that the statute is capable of an interpretation which will give it that effect; and it is clear that it can not, and was not intended so to operate. Failing, then, to furnish to the persons to be examined an exemption equivalent to that contained in the Constitution; or to remove the whole liability against which its provisions were intended to protect them; it fails to deprive them of the right to appeal to the privileges therein secured to them. The result is, that, in appealing to his privilege, as an exemption from the obligation to answer the inquiries put to him, the petitioner was in the exercise of his constitutional right; and in his refusal to answer upon that ground was not, and could not be considered as disorderly conduct, or a contempt of the authority of the body before which he was called to answer. There being no legal ground to authorize the commitment upon which he is held, he must be discharged therefrom." [Emery's Case, 107 Mass. 172.]

In Virginia, the Bill of Rights of the Constitution of 1870, contained a provision that had existed in that bill of

rights ever since June 12, 1776, that no man can "be compelled to give evidence against himself." And upon this, the court of appeals said that it was the purpose of the framers of that clause "to declare, as part of the organic law, that no man should anywhere, before any tribunal, in any proceeding, be compelled to give evidence tending to criminate himself, either in that or any other proceeding," and that the provision could not be confined "only to cases in which a man is called on to give evidence himself in a prosecution pending against him."

And thereupon it was ruled that the witness could not be compelled to answer before the grand jury what he knew of a certain duel, because, as he stated, the answer to the question would tend to criminate him. The act of the General Assembly thus brought in question, made provision as follows: "Every person who may have been the bearer of such challenge or acceptance, or otherwise engaged or concerned in any duel, may be required in any prosecution against any person but himself, for having fought or aided or abetted in such duel, to testify as a witness in such prosecution; but any statement made by such person, as such witness, shall not be used against him in any prosecution against himself." The court held that the effect of the statute was to invade the constitutional right of the citizen, and to deprive the witness of his constitutional right to refuse to give evidence tending to criminate himself, without indemnity, and that the act was, therefore, to that extent, unconstitutional and void. It held further that, before the constitutional privilege could be taken away by the Legislature, there must be absolute indemnity provided; that nothing short of complete amnesty to the witness, an absolute wiping out of the offense as to him, so that he could no longer be prosecuted for it, would furnish that indemnity; that the statute in question did not furnish it, but only provided that the statement made by the witness should not be used against him in a prosecution against himself; that, without using one word of that statement, the attorney for the commonwealth

might in many cases, and in a case like that in hand, inevitably would, be led by the testimony of the witness to means and sources of information which might result in criminating the witness himself; and that this would be to deprive the witness of his privilege, without indemnity. And so the judgment of the Hustings court, which ruled to the contrary, was reversed.   [Cullen v. Com., 24 Gratt. 624.]

In New Hampshire, the clause in the Bill of Rights, is exactly like that of Massachusetts above mentioned.    And in the case of State v. Nowell, 58 N. H. 314, Nowell declined to answer about selling liquors as clerk, etc., when questioned by the grand jury, giving the usual reasons for his refusal. The statute in that case had this provision: "No clerk, servant, or agent of any person accused of a violation of this chapter shall be excused from testifying against his principal, for the reason that he may thereby criminate himself; but no testimony so given by him shall, in any prosecution, be used as evidence, either directly or indirectly, against him, nor shall he be thereafter prosecuted for any offense so disclosed by him." The Supreme Court having been moved for an attachment against the recalcitrant witness, said:

"The common-law maxim (thus affirmed by the Bill of Rights) that no one shall be compelled to testify to his own criminality, has been understood to mean, not only that the subject shall not be compelled to disclose his guilt upon a trial of a criminal proceeding against himself, but also that he shall not be required to disclose, on the trial of issues between others, facts that can be used against him as admissions tending to prove his guilt of any crime or offense of which he may then or afterwards be charged, or the sources from which, or the means by which, evidence of its commission or of his connection with it may be obtained." But that court further held in substance and effect, inasmuch as the statute under review secured the witness against all liability to future prosecution, as effectually as if he were wholly innocent, and relieved him

from all liabilities on account of the matters which he was compelled to disclose, that the witness, therefore, had, under the statute, all the protection that the common-law right, adopted by the Bill of Rights in its common-law sense, gave him; and that if prosecuted, a plea that he had disclosed the same offense on a lawful accusation against his principal, would be a perfect answer to the prosecution against himself; and that, consequently, he was compellable to testify, and liable to attachment should he fail to do so.

In Counselman v. Hitchcock, 142 U. S. 547, the court considered the fifth amendment to the Constitution of the United States, heretofore set forth in connection with, and reference to section 860 of the statutes of the United States, which is the following: "No pleading of a party, nor any discovery or evidence obtained from a party or witness by means of a judicial proceeding in this or any foreign country, shall be given in evidence, or in any manner used against him or his property or estate, in any court of the United States, in any criminal proceeding, or for the enforcement of any penalty or forfeiture." And speaking through Mr. Justice BLATCHFORD, ruled that the meaning of the constitutional provision is not merely that a person shall not be compelled to be a witness against himself; but its object is to insure that a person shall not be compelled, when acting as a witness in any investigation, to give testimony which may tend to show that he himself has committed a crime.

The protection afforded by sec. 860 is not co-extensive with the constitutional provision.

As manifest purpose of the constitutional provisions, both of the States and of the United States, is to prohibit the compelling of testimony of a self-criminating kind from a party or a witness, the liberal construction which must be placed on constitutional provisions for the protection of personal rights, would seem to require that the constitutional guaran-

ties, however differently worded, should have as far as possible the same interpretation.

It is a reasonable construction of the constitutional provision, that the witness is protected from being compelled to disclose the circumstances of his offense, or the sources from which, or the means by which, evidence of its commission, or of his connection with it, may be obtained, or made effectual for his conviction, without using his answers as direct admissions against him.

No statute which leaves the party or witness subject to prosecution, after he answers the criminating question put to him, can have the effect of supplanting the privilege conferred by the Constitution.

In view of the constitutional provision, a statutory enactment, to be valid, must afford absolute immunity against future prosecution for the offense to which the question relates, and so the petitioner who had refused to answer an incriminating question in the lower court, was held entitled to his discharge on habeas corpus, section 860, aforesaid, not being regarded as broad in its power of protection as the amendment before referred to, and therefore constitutionally invalid. And the ruling in People v. Kelly, 24 N. Y. 74, that the words "criminal case," mean only a criminal prosecution against the witness himself, was disapproved.

Chief Justice MARSHALL when engaged in the trial of Aaron Burr (1 Burr's Trial, 244), on the question whether the witness was privileged not to accuse himself, gave utterance to similar views, saying: "If the question be of such description, that an answer to it may or may not criminate the witness, according to the purport of that answer, it must rest with himself, who alone can tell what it would be, to answer the question or not. If, in such a case, he say, upon his oath, that his answer would incriminate himself, the court can demand no other testimony of the fact. . . . According to their statement (the counsel for the United States) a

witness can never refuse to answer any question, unless that answer, unconnected with other testimony, would be sufficient to convict him of crime. This would be rendering the rule almost perfectly worthless. Many links frequently compose that chain of testimony, which is necessary to convict any individual of a crime. It appears to the court to be the true sense of the rule, that no witness is compellable to furnish any one of them against himself. It is certainly not only a possible but a probable case, that a witness, by disclosing a single fact, may complete the testimony against himself; and to every effectual purpose accuse himself as entirely as he would by stating every circumstance which would be required for his conviction. That fact of itself might be unavailing; but, all other facts without it would be insufficient. While that remains concealed within his own bosom, he is safe; but draw it from thence, and he is exposed to a prosecution. The rule which declares that no man is compellable to accuse himself, would most obviously be infringed, by compelling a witness to disclose a fact of this description.

"What testimony may be possessed, or is attainable, against any individual, the court can never know. It would seem, then, that the court ought never to compel a witness to give an answer, which discloses a fact that would form a necessary and essential part of a crime, which is punishable by the laws."

This ruling by the eminent Chief Justice, was in 1807, the fifth amendment, among others, having been ratified in 1791.

In the present instance, section 2206 of our statutes, now under comment, must be regarded, under the authorities cited, (except Kelly's Case, supra) and for the reasons therein given, as falling under the ban of section 23 of our Bill of Rights.

We therefore enter an order discharging the petitioner from custody. All concur.