(115 N. W. 663.)

IN RE BEER.

Opinion filed March 27, 1908.

**Constitutional Law — Privilege of Witnesses — Self Crimination.**

1. A witness, sworn before a grand jury, cannot be compelled to answer questions which would tend to criminate him, and is privileged from answering such questions by section 13 of the constitution, which declares that "no person * * * shall be compelled in any criminal case to be a witness against himself," unless granted unconditional immunity from prosecution for the offense concerning which he is testifying by statute.

**Same.**

2. Section 9383, Rev. Codes 1905, which provides that "no person shall be excused from testifying * * * by reason of his testimony tending to criminate himself (the witness), but the testimony given by such person shall in no case be used against him," does not grant immunity from prosecution.

**Same — Answer Subjecting Witness to Criminal Prosecution.**

3. Under section 13 of the constitution the witness is protected from testifying to facts and circumstances from which his connection with, or guilt of, a crime, may be proven through other sources than his answers.

**Same — Immunity Statutes.**

4. Before a witness can be compelled to answer questions which tend to criminate him, the statute granting immunity must be coextensive in scope and effect with the constitutional guaranty.

**Same.**

5. The legislature has no power to restrict or abridge the privilege guaranteed by section 13 of the constitution.

Original application by Anton Beer for a writ of habeas corpus.

Writ issued.

*B. D. Townsend,* for petitioner.
*Guy C. H. Corliss,* for defendant.

MORGAN, C. J. This is an application for a writ of habeas corpus. The petitioner, Anton Beer, alleges that he is illegally imprisoned and restrained of his liberty by the sheriff of Burleigh county, and that he is so restrained under a warrant issued by the district court of said county for an alleged contempt against said district court. The facts on which said warrant was issued are the following: A grand jury was duly called, summoned, and impaneled in said county at the June, 1907, term of said court, and among other matters under investigation by the same was a charge against one Edward G. Patterson for a violation of the prohibition law of the state of North Dakota. The petitioner was subpœnaed and appeared before said grand jury as a witness on the investigation of said charge against said Patterson. When said Beer appeared before said grand jury and was sworn, he was asked the following questions: "So far as you know, are all the receipts of the business there carried on by Edward G. Patterson turned over to him, or to some one representing him? Has Edward G. Patterson, during the time you were working for him, had intoxicating liquors shipped in to him? If so, how often, and in what quantities? If intoxicating liquors have been shipped in to him, have they been stored in said hotel building? If so, in what part thereof? Did you ever see any one drinking intoxicating liquor in said hotel? If so, how often have you seen them, and state the different places? How close to said cafe were said intoxicating liquors stored in said hotel, if they were stored therein?" The said Beer refused to answer each of said questions on the ground that his answers thereto might tend to incriminate him. The grand jury reported to the court that said Beer had refused to answer said questions, and, acting on said report, the district court issued an order directed to said Beer that he show cause why he had refused to answer said questions. After a hearing upon said order to show cause the district court adjudged that the said Beer was guilty of contempt of court, and that he be punished for said contempt by payment of a fine of $5, and that he be committed to the cus-

tody of the sheriff of Burleigh county until such time as he should
answer said questions and pay said fine,   or   until   discharged
from custody, by the further order of said court.   After being
committed, the petitioner applied to this court for a writ of habeas
corpus, and upon the hearing of said application it was contended
by the state that the commitment was legal, and that   the   peti-
tioner was legally imprisoned.

No question is raised as to the fact that the questions were such
that the answers thereto by the witness might tend to incrimi-
nate him.   The contention of the state is, however, that the wit-
ress was not asked any question that would infringe upon his con-
stitutional rights as laid down in section 13 of the constitution,
which provides that "no person shall  *  *  *  be compelled in
any criminal case to be a witness against himself."   The reason
advanced for this contention is that section 9383, Rev. Codes 1905,
grants to the witness sufficient immunity by reason of answering
such questions, although the answers may tend to incriminate him.
The said section is as follows:   "No person shall be excused from
testifying concerning any offense committed by another against
any of the provisions of this chapter by reason of his testimony
tending to   criminate himself (the witness), but the testimony giv-
en by such person shall in no case be used against him."   The
petitioner, in answer to the state's contention that said section
grants him adequate protection by reason of the possible incrim-
inating tendency of his answers, claims that the protection afforded
by the statute is restricted to the one fact that his answers can-
not thereafter be used against him.   His contention is that, be-
fore he is compellable to answer, the statute must grant him ab-
solute and unconditional immunity from prosecution for any offense
that may in any way be disclosed or uncovered by or through
his answers, and that it is not an adequate protection to him that
his answers may not be used against him, but that the constitutional
privilege contemplates that facts which may be thereafter disclosed
by the prosecution through or based on his answers cannot be
used against him.   He contends that the constitutional provision
would be infringed if any answer given by him would lead to
other evidence against him, if such evidence could be used against
him, although his answers could not.   In other words, his conten-
tion is that in no case is he compelled to answer unless the statute
grants him immunity from prosecution for the offense under in-

vestigation, and that immunity is not granted unless the statute is as broad as, and coextensive with, the constitutional privilege. It is patent that the efficacy of the constitutional provision would be seriously impaired if facts disclosed by witness' answers could be proven against him. It is patent also that section 9383, supra, affords the witness no protection from such other testimony, and that the only immunity provided for therein is that the "testimony given" shall not be used against him. The privilege guaranteed by this constitutional provision relates to the personal liberty of the citizen, and it is now a generally accepted principle that such constitutional provisions should be liberally construed and given full force, or the intent thereof will be unavailing. If the witness is subject to criminal prosecution after his answers have been given, where the privilege has been rightfully and in good faith claimed by him, it needs no more than the statement of the fact that the constitutional guaranty has been violated, although the statute prohibits the use of his answers against him.

Facts may be disclosed by the witness, capable of proof by other witnesses that will fully show the witness' participation in, or guilt of, the crime charged.

In Henry Emery's Case, 107 Mass. 172, 9 Am. Rep. 22, the Supreme Court of Massachusetts, in discussing the case of People v. Kelly, 24 N. Y. 74, said: "The terms of the provision in the Constitution of Massachusetts requires a much broader interpretation, as has already been indicated; and no one can be required to forego an appeal to its protection, unless first secured from future liability and exposure, to be prejudiced, in any criminal proceeding against him as fully and extensively as he would be secured by availing himself of the privilege accorded by the constitution. Under the interpretation already given this cannot be accomplished so long as he remains liable to prosecution criminally for any matters or questions in respect of which he shall be examined, or to which his testimony shall relate. It is not done, in direct terms, by the statute in question. It is not contended that the statute is capable of an interpretation which will give it that effect; and it is clear that it cannot, and was not intended so to operate. Failing, then, to furnish to the persons to be examined an exemption equivalent to that contained in the constitution, or to remove the whole liability against which its provisions were intended to protect them, it fails to deprive them of the right to appeal to the

privilege therein secured to them." This statement is in accord with our views as to the proper construction of our constitutional provision, although the Massachusetts Constitution is not in the same language.

The fifth amendment to the federal constitution contains a provision identically the same as the one under consideration, and section 860 of the United States Revised Statutes [U. S. Comp. St. 1901, p. 661] is of the same import as our section 9383, supra. These federal provisions were construed by the United States Supreme Court in Counselman v. Hitchcock, 142 U. S. 547, 12 Sup. Ct. 195, 35 L. Ed. 1110. In an elaborate and exhaustive discussion of all phases of this question, and after a review of all the authorities that court has made it plain, by the strongest reasoning, that the constitutional guaranty is necessarily invaded, unless the witness is protected from prosecution by a statute as broad and extensive as the constitutional privilege, and that a statute simply providing that the answers of the witness shall not be used against him is not as broad and comprehensive as the privilege guaranteed by the constitution. In that case the court said: "It remains to consider whether section 860 of the Revised Statutes [U. S. Comp. St. 1901, p. 661] removes the protection of the constitutional privilege of Counselman. That section must be construed as declaring that no evidence obtained from a witness by means of a judicial proceeding shall be given in evidence, or in any manner used against him or his property or estate, in any court of the United States, in any criminal proceeding, or for the enforcement of any penalty or forfeiture. It follows that any evidence which might be obtained from Counselman by means of his examination before the grand jury could not be given in evidence, or used against him or his property in any court in the United States, in any criminal proceeding, or for the enforcement of any penalty or forfeiture. This, of course, protected him from the use of his testimony against him or his property in any prosecution against him or his property in any criminal proceeding in a court of the United States. But it had only that effect. It could not, and would not, prevent the use of his testimony to search out other testimony to be used in evidence against him or his property in a criminal proceeding in such court. It could not prevent the obtaining and the use of witnesses and evidence which should be attributable directly to the testimony he might give under compulsion, and on which he might be convicted,

when otherwise, and if he had refused to answer, he could not possibly have been convicted. The constitutional provision distinctly declares that a person shall not be compelled in any criminal case to be a witness against himself, and the protection of section 860 is not coextensive with the constitutional provision. Legislation cannot detract from the privilege afforded by the constitution."

The effect given to this constitutional provision by the Counselman case had been declared the true one by Chief Justice Marshall in the Burr trial, when he said: "Many links frequently compose that chain of testimony which is necessary to convict any individual of a crime. It appears to the court to be the true sense of the rule that no witness is compellable to furnish any one of them against himself. It is certainly not only a possible, but a probable case, that a witness, by disclosing a single fact, may complete the testimony against himself, and to every effectual purpose accuse himself as entirely as he would by stating every circumstance which would be required for his conviction. * * * The rule which declares that no man is compellable to accuse himself would be most obviously infringed by compelling a witness to disclose a fact of this description."

It is true that prior to the decision of the Counselman case state courts had variously decided this question. Since that decision, however, the trend of the decisions of state courts has been to follow that decision. In some states former decisions have been overruled, and the Counselman case followed, although not binding on the state courts in a legal sense. The case of People v. O'Brien, 176 N. Y. 253, 68 N. E. 353, is a leading case in following the Counselman case, although that court had previously held to the contrary, as announced in People v. Kelly, supra. In the O'Brien case the court said: "We are of the opinion that the construction given to the very clear and plain words of the constitution in Counselman v. Hitchcock is reasonable, fair, and accords a witness only such protection as the plain letter of the constitution confers. If this is not the proper construction, the witness might be required to disclose circumstances that would enable the public prosecutor to institute criminal proceedings against him, wherein he might be convicted without reading his evidence taken in another case." The following cases, with many others, sustain this construction of this constitutional provision, and that witnesses cannot be compelled to answer questions, the answer to which would tend to

criminate them, unless granted complete immunity from prosecution: Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746; Brown v. Walker, 161 U. S. 591, 16 Sup. Ct. 644, 40 L. Ed. 819; Hale v. Henkel, 201 U. S. 43, 26 Sup. Ct. 370, 50 L. Ed. 652; Smith v. Smith, 116 N. C. 386, 21 S. E. 196; State v. Murphy, 128 Wis. 201, 107 N. W. 470; State v. Nowell, 58 N. H. 314; Ex parte Carter, 166 Mo. 604, 66 S. W. 540, 57 L. R. A. 654; Miskimmins v. Shaver, 8 Wyo. 392, 58 Pac. 411, 49 L. R. A. 831; Ex parte Clark, 103 Cal. 352, 37 Pac. 230; Lamson v. Boyden, 160 Ill. 613, 43 N. E. 781; State v. Burrell, 27 Mont. 282, 70 Pac. 982; In re Scott (D. C.) 95 Fed. 815; In re Shera (D. C.) 114 Fed. 207; People v. Sharp, 107 N. Y. 427, 14 N. E. 319, 1 Am. St. Rep. 851; People ex rel. Akin v. Butler St. F. & I. Co., 201 Ill. 236, 66 N. E. 349; State v. Gardner, 88 Minn. 130, 92 N. W. 529; Elliott on Ev., section 1011, and cases cited.

It follows that section 9383, supra, infringes on section 13 of the constitution, and is therefore void. It does not grant immunity as extensive as that contemplated by the constitutional guaranty. The legislature is not vested with authority or power to abridge the constitutional guaranty embodied in said section 13.

It is strenuously urged by the state that said section 9383 should be upheld upon the grounds of public policy. It is advanced as a reason in favor of that contention that no witness innocent of crime need ever claim his privilege, and that the constitutional provision should be strictly construed to further an efficient enforcement of the laws. If our interpretation of the true meaning of this constitutional provision were to have the effect of obstructing the enforcement of the criminal statutes, it would be indeed regrettable; but the remedy for the evils described should not be invoked through a denial to any person of a plain constitutional privilege thoroughly intrenched in our jurisprudence from the earliest days. The remedy must come, if the evils are real, through legislative or constitutional amendments, and not through the courts, who have a duty to give effect, under established rules, to constitutional and legislative enactments according to the intent of the framers.

This disposes of the only question raised on this application. We have purposely avoided saying anything concerning questions sometimes arising in connection with cases like the one under consideration. These other questions may some time in the future

arise, when it will be necessary to decide whether the court or the witness is to determine whether answers to certain questions will have a tendency to criminate the witness, and whether under other circumstances the witness will be entitled to insist on his privilege.

It follows that the writ must be issued. All concur.

SPALDING, J., did not sit on the argument of this case, and took no part in the decision thereof; Hon. CHAS. F. TEMPLETON, judge of the First judicial district, sitting by request.