STATE of North Dakota, Plaintiff
and Appellee,

v.

Daniel Lucian BEATON, Defendant
and Appellant.

Cr. No. 930322.

Supreme Court of North Dakota.

May 19, 1994.

Mark Rainer Boening, Asst. State's Atty., Fargo, for plaintiff and appellee.

Robin L. Olson, Nelson Law Office, Fargo, for defendant and appellant.

VANDE WALLE, Chief Justice.

Daniel Lucian Beaton appealed from a judgment of conviction entered upon a jury verdict finding him guilty of being in actual physical control of a motor vehicle while under the influence of intoxicating liquor.[1] We conclude that Beaton's statements refusing to submit to a chemical test to determine his blood alcohol content should not have been admitted into evidence. We reverse the judgment and remand for a new trial.

On April 20, 1993, Trooper Ronald Duane Stanley, North Dakota Highway Patrol, was dispatched to a location on Cass County Road 26, near Gardner, North Dakota.

When Stanley arrived at the location, he observed a vehicle parked "two-thirds of the way onto the roadway just before a bridge that goes into Minnesota." There was a beer can outside the driver's door. Stanley "walked up to the vehicle, removed the key from the ignition, picked up the can, took those back" to his car and awakened Beaton, who was sleeping in the driver's seat. When he awakened Beaton, Stanley could smell the odor of alcohol on Beaton's breath and observed that Beaton's "eyes were red, watery, and bloodshot."

■ Stanley had Beaton perform field sobriety tests and arrested him for actual physical control. Beaton was handcuffed and placed in the back seat of the patrol car. Another officer drove Beaton's car to Beaton's home in Perley, Minnesota. Stanley read to Beaton an implied consent advisory.[2] Stanley did not advise Beaton that a refusal to take a chemical test to determine his blood alcohol level would be used against him at trial and did not give Beaton a Miranda[3] warning. Beaton refused to submit to a test.

Beaton moved to suppress his statements refusing to take a chemical test and to dismiss the case. The trial court denied the motion. A jury trial resulted in a conviction. Beaton appealed, contending that his seizure

1. Section 39–08–01(1), N.D.C.C., provides in part:
   "1. A person may not drive or be in actual physical control of any vehicle upon a highway ... in this state if any of the following apply:
   "a. That person has an alcohol concentration of at least ten one-hundredths of one percent by weight at the time of the performance of a chemical test within two hours after the driving or being in actual physical control of a vehicle.
   "b. That person is under the influence of intoxicating liquor."

2. Section 39–20–01, N.D.C.C., provides in part:
   "Any person who operates a motor vehicle on a highway ... in this state is deemed to have given consent, and shall consent, subject to the provisions of this chapter, to a chemical test, or tests, of the blood, breath, saliva, or urine for the purpose of determining the alcoholic ... content of the blood.... The test or tests must be administered at the direction of a law enforcement officer only after placing the person, ..., under arrest and informing that person that the person is or will be charged with the offense of driving or being in actual physical control of a vehicle upon the public highways while under the influence of intoxicating liquor, ... The law enforcement officer shall also inform the person charged that refusal of the person to submit to the test determined appropriate will result in a revocation for up to three years of the person's driving privileges. The law enforcement officer shall determine which of the tests is to be used."

3. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Stanley testified at a hearing on Beaton's suppression motion that he never gives Miranda warnings in DUI arrests. Testimonial evidence given by an accused in custodial interrogations without being given a Miranda warning must be suppressed in criminal actions. State v. Fasching, 453 N.W.2d 761 (N.D.1990). Miranda warnings must be given in driving while intoxicated cases or a defendant's statements to police officers will be inadmissible. Berkemer v. McCarty, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); State v. Fasching, supra; State v. Fields, 294 N.W.2d 404 (N.D. 1980).

was illegal, that the use at trial of his words refusing a chemical test violated his privilege against self-incrimination under Art. I, § 12, N.D. Const., that his refusal to submit to a chemical test should have been excluded under Rule 403, N.D.R.Ev., and that Stanley had no "jurisdiction to request the chemical test."

■ An officer has reasonable grounds or probable cause to arrest if the facts and circumstances within the officer's knowledge " 'are sufficient to warrant a man of reasonable caution in believing that an offense has been or is being committed.' " *Moser v. North Dakota State Highway Comm'r,* 369 N.W.2d 650, 652–53 (N.D.1985), quoting *Witte v. Hjelle,* 234 N.W.2d 16, 18 Syllabus ¶ 3 (N.D.1975). Here, the facts and circumstances encountered in Stanley's investigative and caretaking encounter with Beaton led to further knowledge, which ultimately provided Stanley with probable cause to arrest Beaton for actual physical control. *See, e.g., State v. Langseth,* 492 N.W.2d 298 (N.D. 1992); *Wolf v. North Dakota Highway Comm'r,* 458 N.W.2d 327 (N.D.1990); *Wibben v. North Dakota State Highway Comm'r,* 413 N.W.2d 329 (N.D.1987).

Section 39–20–08, N.D.C.C., provides that refusal to submit to a test is admissible in actions or proceedings: [4]

"If the person under arrest refuses to submit to the test or tests, *proof of refusal* is admissible in any civil or criminal action or proceeding arising out of acts alleged to have been committed while the person was driving or in actual physical control of a vehicle upon the public highways while under the influence of intoxicating liquor, drugs, or a combination thereof." (Emphasis added.)

The Fifth Amendment to the United States Constitution provides an accused with a privilege against self-incrimination: "No person ... shall be compelled, in any criminal case, to be a witness against himself." Article I, § 12, N.D. Const., also provides a privilege against self-incrimination: "No person shall ... be compelled in any criminal case to be a witness against himself."

Beaton unsuccessfully sought to have his statements of refusal to submit to a blood test suppressed. At the hearing on Beaton's motion to suppress, Stanley testified about Beaton's refusal:

"Q. Did you ask him to submit to a blood drawing at that point?

"A. Several times through the trip I had asked him to submit to a blood sample.

"Q. Did you actually go to the hospital?

"A. Yes, I did.

"Q. When you were at the hospital did you ask him again?

"A. Yes, I did.

"Q. And how did he respond?

"A. I'd asked him if he would consent to a blood test and he said, 'No.' And I told him that that would be going down as a refusal and he said that he understood that. He also said that I had been very fair. And I said, 'Okay, then we'll go from here to Cass County.' "

At Beaton's jury trial, Stanley testified about Beaton's refusal:

"Q. Did Mr. Beaton agree to take a test?

"A. No, he said he didn't want to take it. I said we have got thirty minutes to get back into Fargo. He can think on it on his way in and we can make another decision once we get back to Fargo.

"Q. Did you then go back to Fargo?

"A. Yes, we did.

"Q. Did you ask him again on your way back to Fargo whether or not he would submit to a chemical test?

"A. I asked him en route to Fargo when we were probably still 25 miles out and again when we were at the hospital at the ER room when he was still in my car.

"Q. What was his response?

"A. The third time I asked him I said, 'would you consider taking the test?' And he said, 'No.' And I said, 'Well, it will go down as a refusal.' And he said, 'Well,

---

4. Prior to the adoption of § 39–20–08, N.D.C.C., this court had held that in cases in which a defendant did not testify, testimony of the defendant's refusal to submit to a chemical test could not be received in evidence against him. *State v. Severson,* 75 N.W.2d 316 (N.D.1956).

you've been very fair. I do not want to take the test.' And I said, 'Okay. It will go down as a refusal then.' "

■ Beaton contends that, by using his statements of refusal as evidence against him, the prosecution deprived him of the privilege against self-incrimination afforded him by Art. I, § 12, N.D. Const. In *In re Beer,* 17 N.D. 184, 187, 115 N.W. 672, 673 (1908), this court said of Art. I, § 13, Const. 1889 (now Art. I, § 12, N.D. Const.):

> "The privilege guaranteed by this constitutional provision relates to the personal liberty of the citizen, and it is now a generally accepted principle that such constitutional provisions should be liberally construed and given full force, or the intent thereof will be unavailing."

To secure the privilege against self-incrimination afforded by Art. I, § 12, N.D. Const., we conclude that in criminal prosecutions for driving or being in actual physical control of a motor vehicle while under the influence of intoxicating liquor in violation of § 39–08–01, N.D.C.C., if the defendant was not given the *Miranda* warnings, § 39–20–08, N.D.C.C., must be literally and narrowly construed to make only the fact of refusal, not the defendant's statements of refusal, admissible in evidence.

In *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706–07 (1966), the United States Supreme Court held that a defendant's statements during custodial interrogation were inadmissible in criminal proceedings unless procedural safeguards had been employed to secure the privilege against self-incrimination afforded by the Fifth Amendment to the United States Constitution:

> "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."

The court observed that, "[u]nless adequate protective devices are employed to dispel the compulsion inherent in custodial surroundings, no statement obtained from the defendant can truly be the product of his free choice." *Id.,* 384 U.S. at 458, 86 S.Ct. at 1619. The court recognized a fundamental tenet that punishment ought to rest on proof, rather than the power to compel: "[O]ur accusatory system of criminal justice demands that the government seeking to punish an individual produce the evidence against him by its own independent labors, rather than by the cruel, simple expedient of compelling it from his own mouth." *Id.,* at 460, 86 S.Ct. at 1620.

The reach of the privilege against self-incrimination was further explained in *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), which was decided one week after *Miranda.* Armando Schmerber was arrested for driving while under the influence of intoxicating liquor. Despite Schmerber's refusal to consent to a test, a blood sample was drawn from his body at the direction of a police officer. The test result was admitted into evidence and Schmerber was convicted. The court held that the Fifth Amendment privilege against self-incrimination "protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature, and ... the withdrawal of blood and use of the analysis in question in this case did not involve compulsion to these ends." *Id.,* 384 U.S. at 761, 86 S.Ct. at 1830. As the court explained, "[t]he distinction which has emerged, ..., is that the privilege is a bar against compelling 'communications' or 'testimony,' but that compulsion which makes a

suspect or accused the source of 'real or physical evidence' does not violate it." *Id.*, at 764, 86 S.Ct. at 1832.

The United States Supreme Court further explained what constitutes evidence of a testimonial or communicative nature in *Pennsylvania v. Muniz*, 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990), where Muniz was given field sobriety tests, videotaped, asked if he knew the date of his sixth birthday and other questions, arrested, and booked for driving while intoxicated before he was given a *Miranda* warning. Quoting *Doe v. United States*, 487 U.S. 201, 210, 108 S.Ct. 2341, 2347, 101 L.Ed.2d 184, 197 (1988), the court said: " '[I]n order to be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information.' " *Muniz*, 496 U.S. at 589, 110 S.Ct. at 2643. The court held that Muniz's response to the sixth birthday question was testimonial and should have been suppressed:

> "In contrast, the sixth birthday question in this case required a testimonial response. When Officer Hosterman asked Muniz if he knew the date of his sixth birthday and Muniz, for whatever reason, could not remember or calculate that date, he was confronted with the trilemma. By hypothesis, the inherently coercive environment created by the custodial interrogation precluded the option of remaining silent, see n. 10, *supra*. Muniz was left with the choice of incriminating himself by admitting that he did not then know the date of his sixth birthday, or answering untruthfully by reporting a date that he did not then believe to be accurate (an incorrect guess would be incriminating as well as untruthful). The content of his

truthful answer supported an inference that his mental faculties were impaired, because his assertion (he did not know the date of his sixth birthday) was different from the assertion (he knew the date was [correct date]) that the trier of fact might reasonably have expected a lucid person to provide. Hence, the incriminating inference of impaired mental faculties stemmed, not just from the fact that Muniz slurred his response, but also from a testimonial aspect of that response."

496 U.S. at 598–99, 110 S.Ct. at 2649.

■■ Beaton was arrested, handcuffed, and placed in the back seat of a patrol car. There is no doubt, therefore, that Beaton was in custody when he was asked if he would consent to a blood test. Beaton was not given a *Miranda* warning or afforded any other procedural safeguards to secure the privilege against self-incrimination afforded him by Art. I, § 12, N.D. Const. Thus, there were no "adequate protective devices ... employed to dispel the compulsion inherent in custodial surroundings." *Miranda, supra,* 384 U.S. at 458, 86 S.Ct. at 1619. When asked if he would submit to a blood test, Beaton's response, which a juror could infer manifested a consciousness of guilt, was "evidence of a testimonial or communicative nature," *Schmerber, supra,* 384 U.S. at 761, 86 S.Ct. at 1830, that "explicitly or implicitly, relate[d] a factual assertion or disclose[d] information," *Muniz, supra,* 496 U.S. at 589, 110 S.Ct. at 2643.[5] Under these circumstances, we conclude that only the fact of refusal,[6] not Beaton's words of refusal, is admissible in evidence. Beaton's statements of refusal to submit to a blood test were, therefore, inadmissible and the trial court should have excluded them from evidence.[7]

---

5. In *South Dakota v. Neville,* 459 U.S. 553, 564, 103 S.Ct. 916, 923, 74 L.Ed.2d 748, 759 (1983), the United States Supreme Court held "that a refusal to take a blood-alcohol test, after a police officer has lawfully requested it, is not an act coerced by the officer, and thus is not protected by the privilege against self-incrimination." The State's reliance on *Neville,* however, is misplaced. Unlike this case, the driver in *Neville* was given a *Miranda* warning, which, presumably, dispelled the compulsion inherent in custodial surroundings and rendered the officer's request for a test noncoercive.

6. In *State v. Murphy,* 516 N.W.2d 285, —— (N.D. 1994), we rejected an assertion that proof of a refusal might be admitted as evidence under § 39–20–08, N.D.C.C., but that the jury should be instructed that a refusal is not evidence of guilt and is not to be considered in determining the defendant's guilt or innocence.

7. We need not decide if a simple "No" in response to an officer's question of a defendant "Will you consent to a blood test" must be excluded for lack of a *Miranda* warning. Here, there was more.

Our conclusion that Beaton's words of refusal should have been excluded from evidence in his jury trial requires that we 'reverse Beaton's conviction and remand for a new trial. That would ordinarily be dispositive and be the end of this opinion. We deem it appropriate, however, to briefly address two other issues raised in this appeal that are certain to arise again on remand.

■ While Stanley and Beaton were in Minnesota as Beaton's car was being driven to his home in Minnesota, Stanley asked Beaton if he would submit to a blood test. Beaton contends that "Stanley lacked jurisdiction to request the chemical test" in Minnesota. Stanley also requested Beaton to consent to a blood test while they were in North Dakota. The argument is without merit.

■ Because we have held that Beaton's statements of refusal to submit to a blood test were inadmissible, we need not address Beaton's argument that the statements should have been excluded as prejudicial under Rule 403, N.D.R.Ev. As to the fact of refusal, as distinguished from statements of refusal, we are not persuaded that a balancing, under Rule 403, N.D.R.Ev., of the probative value of the evidence against the risk of unfair prejudice is appropriate. The Legislature has the power to make evidence admissible. *State v. Fischer*, 459 N.W.2d 818 (N.D.1990). The Legislature has made the fact of refusal admissible in evidence. Section 39–20–08, N.D.C.C. The parties have not considered the effect of Rule 26, N.D.R.Crim.P., which provides, in part, that "[a]ll evidence shall be admitted which is admissible under the statutes of this State." Nothing in the record or arguments before us indicates that this is an extraordinary case warranting deviation, through the balancing process of Rule 403, N.D.R.Ev., from the admissibility ordinarily required of evidence made admissible by statute.

The judgment is reversed and the matter is remanded for a new trial.

SANDSTROM, NEUMANN and MESCHKE, JJ., concur.

LEVINE, Justice, dissenting.

Resolution of the issue here does not rest on federal or state constitutional grounds; rather, it depends upon whether a police officer's inquiry whether a suspect will submit to a blood test is interrogation triggering the application of *Miranda*. Because I would answer that question in the negative, I dissent.

In *South Dakota v. Neville*, 459 U.S. 553, 564, 103 S.Ct. 916, 922–23, 74 L.Ed.2d 748 (1983), the Supreme Court held "that a refusal to take a blood-alcohol test, after a police officer has lawfully requested it, is not an act coerced by the officer, and thus is not protected by the privilege against self-incrimination." The Court also noted,

"In the context of an arrest for driving while intoxicated, a police inquiry of whether the suspect will take a blood-alcohol test is not an interrogation within the meaning of *Miranda*. As we stated in *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980), police words or actions 'normally attendant to arrest and custody' do not constitute interrogation. The police inquiry here is highly regulated by state law, and is presented in virtually the same words to all suspects. It is similar to a police request to submit to fingerprinting or photography. Respondent's choice of refusal thus enjoys no prophylactic *Miranda* protection outside the basic Fifth Amendment protection." *Id.* at 564 n. 15, 103 S.Ct. at 923 n. 15.

In *Pennsylvania v. Muniz*, 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990), the Court addressed directly the issue of whether a defendant's statements, made when asked to submit to a breathalyzer test, must be suppressed in the absence of *Miranda* warnings. The Court stated:

"We believe that Muniz's statements were not prompted by an interrogation within the meaning of *Miranda*, and therefore the absence of *Miranda* warnings does not require suppression of these statements at trial.... Officer Deyo carefully limited her role to providing Muniz with relevant information about the breathalyzer test and the Implied Consent

Law. She questioned Muniz only as to whether he understood her instructions and wished to submit to the test. These limited and focused inquiries were necessarily 'attendant to' the legitimate police procedure, see *Neville, supra* [459 U.S.], at 564, n. 15 [103 S.Ct. at 923 n. 15], and were not likely to be perceived as calling for any incriminating response." *Id.* 496 U.S. at 605, 110 S.Ct. at 2652 (footnotes and citation omitted).

I see no difference between this case and *Pennsylvania v. Muniz.* The testimonial or communicative nature of Beaton's statements is irrelevant, for purposes of *Miranda,* if the statements were not elicited in response to custodial interrogation. While there may be no doubt that Beaton was in custody, *see ante* at 649, the trooper's inquiry whether Beaton would submit to a blood-alcohol test is not interrogation under *Neville* and *Muniz.*

For these reasons, I would not hold Beaton's statements of refusal inadmissible.