AMERICAN SMELTING & REFINING CO. v. RIVERSIDE DAIRY &
STOCK FARM.

(Circuit Court of Appeals, Eighth Circuit.  October 14, 1916.)

No. 4635.

1. DAMAGES ☞112—GROWING CROPS—MEASURE OF DAMAGES.
    The measure of damages to growing crops injured by smelter smoke
    and fumes is the difference between the market value of the crop that
    would probably have been raised, but for the smoke, at the nearest time
    and place when it had a market value, and the market value of the crop
    actually raised, less the expense and labor which was saved by reason
    of the injury.
    [Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 281–283; Dec.
    Dig. ☞112.]

2. APPEAL AND ERROR ☞1067—REVIEW—HARMLESS ERROR.
    In an action for injuries to growing crops, the refusal of an instruction
    correctly stating the measure of damages is reversible error, where no
    such instruction was given.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4229;
    Dec. Dig. ☞1067; Trial, Cent. Dig. § 475.]

3. DAMAGES ☞62(1)—NUISANCE ☞50(5)—DUTY TO AVOID LOSS.
    While one injured by another's tort should use ordinary care to pre-
    vent the damages from being enhanced, the rule has no application to a
    case of nuisance, or where the injury could only have been prevented by
    an extraordinary effort or cost; the test being what a reasonably prudent
    man would do under the circumstances.
    [Ed. Note.—For other cases, see Damages, Cent. Dig. § 119; Dec. Dig.
    ☞62(1); Nuisance, Cent. Dig. § 127; Dec. Dig. ☞50(5).]

4. NUISANCE ☞50(5)—INJURIES—CARE TO PREVENT DAMAGE.
    Where persons interested in the plaintiff corporation, which was en-
    gaged in dairying, noticed that some of the cattle were not doing well,
    and there was some discussion whether the condition of the cattle was
    caused by the poisoning of pastures from smoke emitted from defendant's
    smelter, but there was nothing more than a suspicion, plaintiff will not
    be denied relief on the ground that it should have taken steps to prevent
    the damage, for the injury was a continuing nuisance, and the evil ef-
    fects could have been avoided only by abandonment of the land for dairy-
    ing purposes and a complete interruption of plaintiff's business, which
    would have required considerable expense and effort.
    [Ed. Note.—For other cases, see Nuisance, Cent. Dig. § 127; Dec. Dig.
    ☞50(5).]

5. APPEAL AND ERROR ☞843(4)—REVIEW—QUESTIONS PRESENTED FOR RE-
    VIEW.
    Where the judgment was reversed on other grounds, and the failure of
    the answer to urge a particular defense could be cured by amendment,
    the question whether the answer raised the defense need not be deter-
    mined.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3336;
    Dec. Dig. ☞843(4).]

6. NUISANCE ☞49(5)—PROOF—DAMAGES.
    Where plaintiff's crops were injured by smelter smoke liberated by de-
    fendant, recovery will not be denied because the amount of the injury was
    not ascertainable with certainty and precision, although it cannot be
    based on mere conjecture; the essential elements of the cause of action
    being established.
    [Ed. Note.—For other cases, see Nuisance, Dec. Dig. ☞49(5).]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the District of Utah; John A. Marshall, Judge.

Action by the Riverside Dairy & Stock Farm, a corporation, against the American Smelting & Refining Company, a corporation. There was judgment for plaintiff, and defendant brings error. Reversed and remanded.

F. H. Brownell, of New York City, and Richards & Richards, Bagley & Ashton, and William M. McCrea, all of Salt Lake City, Utah, for plaintiff in error.

Mathonihah Thomas and O. P. Soule, both of Salt Lake City, Utah, for defendant in error.

Before SANBORN and CARLAND, Circuit Judges, and VAN VALKENBURGH, District Judge.

VAN VALKENBURGH, District Judge. The writ of error in this action is prosecuted from a judgment rendered in favor of defendant in error, hereinafter called the plaintiff, against the plaintiff in error, hereinafter designated the defendant, in the District Court of the United States within and for the district of Utah, upon a complaint in an action for damages, claimed to have been suffered by plaintiff in the manner following:

The complaint recites that the plaintiff and defendant are corporations; that the plaintiff was the owner, in possession, and entitled to the possession of real property situated in Salt Lake county, state of Utah; that since about December 1, 1911, the plaintiff was engaged in carrying on and conducting a dairy and stock farm upon said premises; that since that time, and for some years prior thereto, the defendant was the owner of and engaged in the operation of a smelter, situated about 2½ miles southeasterly of plaintiff's lands, and that by reason of the operation of said smelter large quantities of smoke, gases, fumes, and particles of a poisonous and deleterious character were emitted from said smelter, and were injurious to and destructive of all forms of animal and vegetable life, and were carried over and upon the premises of the plaintiff, thereby causing the crops upon plaintiff's premises to be less abundant, and thereby rendering such crops poisonous, unwholesome, and unfit to be eaten by animals; that by reason thereof the plaintiff suffered injury to and destruction of crops growing upon said premises; and that by inhaling said poisonous substances, and by eating the hay and other products grown upon the premises, and so impregnated with said poisonous elements, the horses and cattle of the plaintiff became unhealthy, and some of them permanently injured. The complaint further recites injuries to the crops, alleged to have been sustained during the years 1912 and 1913, and damage by reason of the death of horses, cows, and calves, and permanent injuries to cows and bulls. By its answer the defendant substantially traversed these allegations of the complaint, and denied responsibility for the injuries and damages charged to have been sustained by the plaintiff. Upon the issues joined, the case was tried before a jury, and judgment

was rendered upon a verdict in favor of the plaintiff in the sum of $3,000. The foregoing statement of facts is taken, without material change, from the brief of plaintiff in error, defendant below, and adopted as correct by counsel for defendant in error. The consideration of the case is still further simplified by this additional statement by counsel for plaintiff in error:

"For the purpose of the presentation of this writ of error it would serve no useful purpose at this time to attempt a more complete statement of the facts, for the reason that such of the facts and of the evidence as is important will be set forth in discussing the several errors here relied upon. Suffice it to say that the plaintiff sought to establish, and introduced evidence tending to show, that the defendant in its operations did emit poisonous substances that were carried over and upon plaintiff's premises, inflicting the injury and causing the damage set forth in its complaint, and that the defendant introduced evidence tending to show that in its operations the defendant did not emit any substances during the times mentioned in the complaint that could or did cause any injury or damage whatsoever to the plaintiff. Upon these questions all that can be said is that there was a conflict in the evidence, and it is not the purpose of the defendant in the prosecution of this writ to ask this court to review them."

We come, then, directly to the specifications of error assigned. They are, substantially, three in number: (1) The refusal of defendant's requested instruction No. 14, by which the question of the proper measure of damage to growing crops was sought to be explained to the jury. (2) The refusal of instructions 3 to 13, inclusive, which sought to submit to the jury the question of whether, in a case of this nature, the plaintiff was required to minimize its damage upon becoming aware that such damage was threatened. (3) The insufficiency of the evidence to justify submitting to the jury the question of damages to certain crops during certain years. These three specifications will be considered in the order named.

[1, 2] Defendant's request No. 14 reads as follows:

"Now as to certain of these matters the law furnishes a specific rule as to the measure of damage. The ordinary rule as to injury to personal property is that the damage is measured by the depreciation in market value of the property due to the wrongful act, estimated as of the time and place of the injury. But when you apply this rule to growing crops, its application is impossible; a growing crop, one that has not matured, has no market value, so that we must apply the rule in a modified sense. Regard must be had to the time when the crop would first have a market value, and the market value at that time and in the nearest place must be estimated. Practically, to apply the rule, you must consider what was the crop that the plaintiff would have raised if the crop had been uninjured by smelter smoke; ascertain the market value of that crop at the nearest time and place when it had a market value, and from that subtract the market value of the crop actually raised. Now the difference would not constitute the damage, for this reason: That certain expense and labor would have been saved the plaintiff by reason of this very wrong. For instance, oats, corn, beets, alfalfa, and pasture that were not raised would not have to be harvested or marketed, and any crop that was not raised would not have to be marketed or gathered. So that, from this difference to which I have called your attention, you must further subtract the expense which the plaintiff was saved. The remainder would be the plaintiff's total damage, not the damage suffered by reason of the smelter smoke and fumes, so that it would still be necessary for you to determine the proportion of this damage that was inflicted by this defendant."

The court refused this instruction, and upon the question of the proper measure of damage to growing crops charged the jury as follows:

"If you find that the operations of the defendant in fact injured those crops, as claimed, you should find a verdict for the amount of such recovery, measured by the depreciation in the market value of crops injured by reason of the injury inflicted by the defendant, estimated as of the time and place of the injury."

This instruction, requested by plaintiff in error, is a sufficiently correct statement of the manner of applying the rule upon the question of the proper measure of damage to growing crops, and either it or some substantial equivalent should have been given to the jury for their guidance. In United States Smelting Co. v. Sisam, 191 Fed. 293, 112 C. C. A. 37, 37 L. R. A. (N. S.) 976, an instruction of very similar import was approved by this court. It was there said:

"The measure of damages to a growing crop by a wrongful act which destroys it is its value at the time and place of its destruction. The measure of the damage to a growing crop, injured, but not rendered worthless, is the difference between the value of that crop before and after the injury at the time and place thereof. Where a crop is injured from time to time throughout its growing season until its maturity by sulphurous fumes and their products, but is not destroyed, so that it is cultivated throughout the season, harvested, and marketed, the damage to it may be lawfully measured under these rules by the difference between the value at maturity of the probable crop, if there had been no injury, and the value of the actual crop at that time, less the expense of fitting for market that portion of the probable crop which was prevented from maturing by the injury."

It will be observed that one of the essential elements to be considered in arriving at the ultimate damage, to wit, "the expense of fitting for market that portion of the probable product which was prevented from maturing by the injury," was tendered by the instruction asked and omitted in the charge of the court. The refusal of that instruction, therefore, was reversible error.

[3, 4] Inasmuch as the judgment below must be reversed upon the ground just stated, it would ordinarily be unnecessary to discuss the remaining assignments; but, since the case must be remanded for another trial, we deem it advisable to add some further suggestions. The second specification of error is based upon the refusal of certain instructions which tendered the question of whether, in a case of this nature, a plaintiff is required to minimize his damage upon becoming aware that such damage is impending. It appears from the testimony that during the summer and fall of 1912 plaintiff's cattle did not seem to be doing well. One of the witnesses, who was interested in the plaintiff corporation, noticed what he thought to be smelter smoke on plaintiff's premises, and there was some discussion among some of the officers of the company as to whether this smelter smoke was not injuriously affecting the cattle by poisoning the pasturage upon which the cattle were grazing. This discussion appears to have resulted in no settled conviction, nor in any conclusion above plain suspicion and speculation. No doubt the general rule is, as stated by Mr. Sutherland in his work on Damages (volume 1, 3d Ed., § 88, p. 257), that:

236 F.—33

"The law imposes upon a party injured by another's breach of contract or tort the active duty of using all ordinary care and making all reasonable exertions to render the injury as light as possible. If by his negligence or willfulness he allows the damages to be unnecessarily enhanced, the increased loss, that which was avoidable by the performance of his duty, falls upon him."

This, however, is not absolute under all circumstances and has been subjected to substantial modification, as well stated in Cyc. vol. 13, p. 75:

"One whose property is endangered or injured by the negligence of another must exercise reasonable care to protect it from further injury; and especially is this rule true where notice of the wrong or injury has been brought home to the party seeking to recover damages, and he has taken no steps to protect himself from further loss. The rule only requires a party to protect himself from the injurious consequences of the wrongful act by the exercise of ordinary care and moderate expense; such rule has no application where the injury could only be prevented by extraordinary effort or cost."

The rule has been held not to apply in cases of nuisance, nor of intentional or positive and continuous torts.

"A person injured by a nuisance is not precluded from a recovery by the fact that he might, by small exertion and a small expenditure, have prevented the injury; the rule being that, as it was the defendant's duty to abstain from the creation of the nuisance, and having created it, adjoining owners are not bound to guard against the consequences ensuing therefrom, when in order to do so they are required to expend time or money. * * * A party is not bound to expend a dollar, or to do any act to secure for himself the exercise or enjoyment of a legal right of which he is deprived by reason of the wrongful acts of another." Wood on Nuisances (3d Ed.) §§ 844, 435; 8 R. C. L. 445; Paddock v. Somes, 102 Mo. 226, 238, 14 S. W. 746, 10 L. R. A. 254; Niagara Oil Co. v. Ogle, 177 Ind. 292, 98 N. E. 60, 64, 42 L. R. A. (N. S.) 714, Ann. Cas. 1914D, 67.

The rule is most commonly applied where plain and certain damage has already accrued, and it is obvious that still further injury will follow unless prompt and reasonable measures are taken to prevent. Slavin v. State of New York, 152 N. Y. 45, 46 N. E. 321; City of Jacksonville v. Doan, 145 Ill. 23, 33 N. E. 878; Beatrice Gas Co. v. Thomas, 41 Neb. 662, 59 N. W. 925, 43 Am. St. Rep. 711. The decisions uniformly hold that such acts of prevention as involve a little timely labor and expense, reasonable exertion, and the exercise of due diligence with the means at hand, are the most than can be required of a plaintiff in any given case. The test is: What would an ordinarily prudent man be expected to do under like circumstances? Sutherland on Damages (3d Ed.) pars. 88 and 90, pages 257 to 262; Gilbert v. Kennedy, 22 Mich. 117, 132, 133; Sedgwick on Damages (9th Ed.) vol. 1, par. 226n, p. 446; Harrison v. Railway, 88 Mo. 625; Warren v. Stoddart, 105 U. S. 224, 229, 26 L. Ed. 1117; Burdon Central Sugar Refining Co. v. Ferris Sugar Mfg. Co. (D. C.) 78 Fed. 417, 427, 428; Western Real Estate Trustees v. Hughes, 172 Fed. 206, 96 C. C. A. 658.

"The rule in question (if based upon the supposed duty) is simply one of good faith and fair dealing." Gilbert v. Kennedy, supra.

Under the doctrine to be deduced from the authorities, we do not believe the duty was imposed upon defendant in error to take the steps

which would obviously have been necessary to avoid the injury it sustained. Neither the cause nor the extent of that injury was so clear and determinate as to suggest with certainty the measures which must necessarily be taken by ordinarily prudent men. Furthermore, the defendant in error was a dairy company, occupying and using its premises in the ordinary course of its business. It could have avoided the effects of this continuing nuisance only by the abandonment of its land and the complete interruption of that business. This would involve expense and effort greatly in excess of that required under any reasonable application of the rule invoked.

[5] It is further urged by defendant in error that a defense in mitigation of damages cannot be shown under a simple denial, but must be specially pleaded. Under the practice obtaining in Utah, the point seems to be well taken. Comp. Laws Utah, 1907, § 2968; Reed v. Union Central Life Insurance Co., 21 Utah, 295, 61 Pac. 21. Inasmuch as, however, upon trial anew, this defect in the answer, if it be one, may be corrected by amendment, it is unnecessary to pass upon the question of pleading at this time.

[6] The third specification urged by plaintiff in error challenged the sufficiency of the evidence to justify submitting to the jury the question of damages to certain crops during certain years. The crops referred to are described as 1912 oats, corn, and beets, and 1913 corn and alfalfa. An examination of the record produces the impression that this criticism is not without substance—at least in part. Since, however, upon another trial the situation presented may be entirely changed, it will be sufficient here to indicate briefly, and in general terms, the character of proof required to warrant submission and to sustain a verdict. While it is undoubtedly true that, where it is certain that damage has resulted, mere uncertainty as to the amount will not preclude the right of recovery, and that the injured party is entitled to complete indemnity, even though the amount is not ascertainable with certainty and precision (Sutherland on Damages [3d Ed.] pp. 3009, 3010; 8 R. C. L. 442; United States Smelting Co. v. Sisam, 191 Fed. 293, 112 C. C. A. 37, 37 L. R. A. [N. S.] 976), nevertheless it should not be left out of mind that "any substantial recovery must not be based on guesswork or inference, but must be supported by evidence of facts, circumstances, and data justifying an inference that the damages awarded are a just and reasonable compensation for the injury suffered" (13 Cyc. p. 218, and cases cited). While the damages may be of such nature that the amount cannot be calculated by some fixed and certain rule, still all the essential elements of the cause of action must be established, and the evidence must support legal inferences under which just and reasonable compensation may be computed by the best rule available under the circumstances of the special case.

The judgment below will be reversed, and the cause remanded for further proceedings in conformity with the views herein expressed.

It is so ordered.