INDIANA PIPE LINE COMPANY v. CHRISTENSEN.

[No. 23,957.    Filed April 24, 1924.    Rehearing denied July, 3, 1924.]

1. ACTION. — *Joinder.* — *Separate Torts.* — *Supplemental Complaints.*—A complaint and supplemental complaint alleging damages from crude oil leaking out of a pipe line, damaging farm lands, growing crops and injuring and killing live stock, during different years is not erroneous for combining and trying separate and distinct torts in one action, since the alleged acts constituted a single complete wrong which could be compensated in a single award.    p. 113.

2. PLEADING.—*Theory.*—*Determination.*—The theory of a pleading is determined by its leading and most apparent facts. p. 114.

3. PLEADING.—*Supplemental.*—*Discretion of Court.*—It is within the discretion of the court (§408 Burns 1914, §399 R. S. 1881) to allow supplemental pleadings showing facts which occurred or acts done after the filing of the original, provided together they form but a single pleading.    p. 114.

4. NUISANCE.—*Action for Damages.*—*Pleading.*—*Negligence.*—A complaint and supplemental complaint alleging damages from crude oil leaking out of a pipe line, damaging farm lands, growing crop and injuring and killing live stock, during different years, stated a cause of action for the negligent operation of a lawful business resulting in a continuing nuisance, so that whether the wrong doer was careful or negligent in the manner of maintaining the nuisance was immaterial.    p. 115.

5. NUISANCE.—*Continuing Nuisance.*—*Pleading.*—*Sufficiency.*—A complaint alleging negligence in opening pipe lines in 1914 without making provisions to control the oil which might escape and in failing to maintain the pipe lines against leaks during 1914 and 1915, and in permitting oil to escape, supplemented by facts showing a continuation of the same negligence until March 1, 1920, charges the maintenance of a continuing nuisance.    p. 116.

6. JUDGMENT.— *Damages.*— *Continuing Nuisance.*— *Subsequent Actions.*—*Presumptions.*—In an action for damages for loss of rents to farm lands caused by a nuisance, if the nuisance is a continuing abatable one, an action prosecuted to a finality will not bar another action to recover the loss of rents for succeeding years, when the nuisance has resulted in further injury, as the law will presume that when the cause of the injury is removed, the injurious consequences will cease.    p. 116.

7. JUDGMENTS.—*Damages.*—*Continuing Nuisance.*—In an action for damages for maintenance of a continuing nuisance, per-

mitting crude oil to leak out of pipe lines, damaging farm lands, growing crops and injuring and killing live stock, the judgment should be limited to the damages actually accrued or sustained during the continuation of the nuisance, thus obviating any opportunity for including speculative or prospective damages. p. 116.

8. NUISANCE.—*Damages.—Pleading.—Presumptions.—Rebuttal.* —In an action for damages caused by the maintenance of a nuisance, permitting crude oil to leak out of pipe lines, the complaint alleging depreciation of rental value, injury and death of live stock during certain years, supplemented by facts showing that the cause of the injury had not been removed nor had its injurious consequences ceased, was effective to rebut the presumption that when the cause of the injury is removed, the injurious consequences will cease. p. 117.

9. TRIAL.—*Instruction.—Harmless Error.*—The refusal to give requested instructions that are substantially embodied in those given is not reversible error. p. 118.

10. DAMAGES.—*Negligence.—Reasonable Care.*—A party injured through the negligence of another must use reasonable care to minimize his damages, and his failure to do so is a matter of mitigation. p. 120.

11. TRIAL.— *Instructions.— Damages.— Negligence.— Reasonable Care.*—An instruction that if the plaintiff knew the harm that would result from drinking crude oil and neglected to use reasonable care to keep his stock away from it, he cannot recover in an action for injury to the stock, was properly refused because it was not made to apply to live stock damaged and killed because of plaintiff's negligence after he knew of the dangerous effect of the oil, there being no evidence that plaintiff knew the effect of drinking crude oil by live stock until after some of the stock had died. p. 120.

12. NUISANCE.—*Damages.—Evidence.—Measure of Damages.— Supplemental Complaint.*—In an action for damages for maintenance of a nuisance, permitting crude oil to leak out of pipe lines, any evidence pertaining to cattle said to have been injured during the period of time covered by the complaint, relative to recovery or want of recovery prior to the trial, was competent as bearing on the measure of damages, whether the facts be pleaded by way of supplemental complaint or not. p. 122.

13. APPEAL.—*Review.—Instructions.—Presumptions.*—The giving of an erroneous instruction is presumed to be harmful unless the record affirmatively shows that it was not. p. 123.

14. APPEAL. — *Review. — Refusal of Instructions. — Harmful Error.*—Appellant must show that the refusal of requested instructions was harmful error. p. 123.

15. NUISANCE.—*Pipe Lines.—Negligence.—Liability.*—The business of transporting oil through pipes across this state has legislative approval, but a lawful business negligently conducted is not a lawful business lawfully conducted. p. 125.

16. TRIAL.—*Misconduct of Counsel.—Discretion of Trial Court.*—Statement by counsel charged a witness with perjury during examination, and made remarks belittling and slurring another witness, tending to prejudice and divert the minds of the jury from the issues, was not reversible error, as matters of conduct of counsel are left to the discretion of the trial court. p. 127.

17. APPEAL.—*Misconduct of Counsel.—Verdict.*—The Supreme Court will not interfere with the final result of the trial because of misconduct of counsel, unless from the whole record it can say that the alleged misconduct was harmful to the complaining party in that it was probably the means of securing a wrong verdict. p. 127.

From LaPorte Circuit Court; *Norman Wolf*, Special Judge.

Action by Christian Christensen against the Indiana Pipe Line Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*H. D. Bushnell, Holman, Bernetha & Miller, Simmons, Dailey & Simmons, Kelley & Galvin, Osborne, Osborne & Link* and *Myers, Gates & Ralston,* for appellant.

*George Burson* and *Darrow & Rowley,* for appellee.

MYERS, J.—The parties to this appeal are here for the second time. *Indiana Pipe Line Co.* v. *Christensen* (1919), 188 Ind. 400. On the first appeal, the judgment was reversed, this court saying, p. 406: "There can be no doubt that it was the theory of the plaintiff below that the injury to the real estate was of a permanent character, affecting the value of the farm as a whole, and that the trial court adopted that theory on the trial." Again, p. 412: "The wrongful act on which the action is based is not treated as a continuing nuisance, but a completed tortious act, resulting in permanent injury to the land affected. Under the pleadings

and the evidence in this case, the recovery must be limited to damages resulting to the land from the oil which had been permitted to flow thereon prior to the commencement of the action; but the entire damage resulting therefrom must be recovered in one action." Attention was then briefly drawn to the theory relied on for a recovery, and the want of evidence tending to prove the permanent nonproductiveness of the soil, resulting in the conclusion that the damages awarded by the verdict were based on an item of damage which had no evidence to sustain it. We deem this general reference to our former decision quite sufficient to show generally the real questions presented and the rulings thereon.

In May, 1915, appellee filed a complaint demanding damages on account of injury to live stock from drinking water polluted with oil and eating oil-covered grass as a result of escaping oil from appellant's disconnected pipe line. This complaint was abandoned. On September 25, 1916, an amended complaint and supplemental complaint thereto was filed and the issues formed thereon resulted in a judgment which, on June 27, 1919, was reversed. Thereafter, on March 1, 1920, by leave of court first obtained, appellee filed a second paragraph and supplemental complaint. At the close of appellee's evidence in chief the original and supplemental complaint of September 25, 1916, was dismissed, and the cause proceeded to judgment on the issues formed by an answer of general denial and by five special paragraphs, each predicated on the six-year statute of limitations, and reply by a general denial. A trial before a jury resulted in a verdict in favor of appellee for $10,000, and judgment followed in accordance with the verdict.

Appellant, for a reversal of this judgment, relies on asserted errors of the trial court in overruling its mo-

tion to strike out appellee's second supplemental complaint; in overruling its motion to strike out certain parts of the second supplemental complaint; in overruling its motion to separate the supplemental complaint from the second paragraph of complaint and docket it as a separate cause of action; and in overruling its motion for a new trial.

The second paragraph, and what was designated "supplemental complaint to the second paragraph of complaint" were filed March 1, 1920, and we will refer to them as "complaint" and "supplemental complaint."

The complaint, after several preliminary allegations and describing the land in question, about 500 acres, alleges, in substance, that prior to 1914 this land was fertile, suitable and used by appellee in agriculture, pasturage, and the growing of hay and succulent grasses, and in connection with appellee's high land, was well adapted for stock raising; that this land bordered on both sides of Pine creek, which, in 1914, was enlarged and straightened as a public drain from a point south of where appellant's pipe line intersects it; that the water of this creek flowed with considerable current until it reached appellee's land, where the fall was very slight; that appellant's pipe line was laid and in use for twenty-five years prior to 1914, and had become rusted, worn out, corroded, rotten, decayed and leaky; that appellant then and continuously since that time used this pipe line for the purpose of transporting a dangerous and deleterious substance known as crude petroleum oil by means of high pressure pumps; that the oil so forced through this pipe line was injurious and poisonous to animal and vegetable life, as well as the soil with which it came in contact; that appellant carelessly, negligently and knowingly failed and omitted to make any proper inspection or examination of its pipes at or near the point where the same crossed Pine

creek and other ditches; that appellant carelessly and negligently opened its pipes and discharged therefrom into Pine creek many hundreds of barrels of crude petroleum oil, and carelessly and negligently suffered its pipes in many places to become out of repair, and during the years 1914 and 1915 great quantities of this poisonous oil leaked and oozed out of its pipe line at many places near Pine creek and ditches crossed by it, and all of this oil so allowed to escape was permitted to flow into ditches and into Pine creek and upon the water therein floated down onto and over appellee's 500-acre tract of land, and to penetrate and poison the soil thereof, destroying the grasses and the productivity of the land for growing corn, oats or any other crop, and rendered it worthless for the production of crops and wholly without any rental value; that prior to the year 1914, eighty acres of this land produced an income of $20 per acre and the remainder $10 per acre, and for the years 1914 and 1915 its reasonable rental value was $20 per acre; that in the year 1914 appellee was the owner and in possession of 250 head of cattle of the value of $75 each, and two horses of the value of $200 each, and grazing on portions of the land at the time it became so saturated and poisoned by the oil allowed to escape from appellant's pipes; that these animals ate of the grasses and other vegetation then growing on the land after the same became poisoned by the oil, and drank of the waters of Pine creek so polluted with the oil aforesaid, and in consequence thereof all of these animals became sick and diseased, and twenty head of cattle of the value of $1,500 and the two horses of the value of $400 died from the effect of the poisonous oil so eaten and drunk, and the remaining cattle sickened and diseased therefrom lost weight and were unmarketable and damaged to at least one-half of their previous value.

It is made to appear by the supplemental complaint covering the years 1916, 1917, 1918 and 1919, that on or about November 25, 1915, "and divers other times and up to the time of filing this supplemental complaint," appellant carelessly, negligently and knowingly permitted its pipe lines "to again become in many places in the same defective and leaky condition, and permitted the said poisonous oil to escape therefrom and flow upon plaintiff's said lands in the manner set forth in the second paragraph," and continued the same negligent acts and omissions, *and that the oil which "escaped from the defendant's pipe lines during the years 1914 and 1915"* on to and poisoned the soil of appellee's lands *still remains there* and by reason thereof these lands which theretofore produced crops as stated in the second paragraph will not, *nor would they since the filing of the original complaint,* produce crops of any kind; that the grasses *theretofore growing* upon these lands and poisoned by the oil aforesaid never revived *nor did the lands recover from their then oil poisoned state* sufficiently to grow blue stem grass theretofore growing naturally thereon and used and useful for pasturage, feeding and hay purposes; that prior to 1914 this land produced from two to two and one-half tons of hay per acre annually of the market value of $12 to $15 per ton; that the portion of this land utilized in raising corn and oats, but for the oil therein, was of the reasonable rental value of $30 per acre for the four years following the year 1915, and the other parts of the land for the same period, and theretofore used for other purposes, was of the reasonable rental value of $20 per acre, but by reason of the careless and negligent acts of appellant thus poisoning the soil and thus destroying the grasses, these lands for this four-year period had no rental value whatever. That since the filing of the original complaint, seventy-five head of appel-

lee's cattle, of the reasonable market value of $150 each and theretofore diseased and sickened from drinking the crude petroleum and poisonous oil aforesaid, died in addition to those mentioned in the second paragraph. A further item of damage was claimed for the loss of 130 head of sheep of the value of $20 each, alleged to have died within the four years following the year 1915 from the effects of eating grass on land overflowed by water and this poisonous oil adjacent to that described in the second paragraph. Damages in the sum of $68,000 was demanded.

The first three errors above noted and relied on by appellant may be considered together. They alike have their standing only upon the theory that separate and distinct torts were, by the complaint and supplemental complaint, sought to be combined and tried in one action. Appellant's line of reasoning in support of these errors is built upon the assumption that there was no escape of oil from its pipes after the years 1914 and 1915, and if so, any damages claimed therefor must be recovered in a separate action and not by supplemental complaint, as they were new torts. Otherwise, these pleadings would amount to a splitting up of the cause of action arising from one and the same permanent injury or abatable nuisance. Furthermore, it insists that the subject-matter of the supplemental complaint was not germane to the original cause of action.

It may be conceded that independent torts cannot be joined with an original action by a supplemental complaint, and that an injury resulting from a single completed wrongful act, however numerous the items of damages may be, must be compensated in a single award. In our judgment, appellant misconstrues the questioned pleadings, thereby subjecting them to gov-

erning principles which do not control when the pleadings are given their full value under a fair interpretation. We may account for appellant's mistaken position only by reason of certain facts found in the 'pleadings which seem to indicate some uncertainty of the pleader in stating the theory upon which he intended to rely. We dispose of this situation by mere reference to elementary rules for the guidance of the court, when, as here, the question arises concerning the real grounds of the action upon which a recovery was had. In the first place the theory of a pleading is determined by its leading and most apparent facts (*First Nat. Bank* v. *Rupert* (1912), 178 Ind. 669), and second, it is within the discretion of the court to allow supplemental pleadings showing facts which occurred or acts done after the filing of the original, provided together they form but a single pleading. *Muncie, etc., Traction Co.* v. *Citizens Gas, etc., Co.* (1912), 179 Ind. 322; *Cleveland, etc., R. Co.* v. *Hadley* (1913), 179 Ind. 429, 45 L. R. A. (N. S.) 796; *Richwine* v. *Presbyterian Church of Noblesville* (1893), 135 Ind. 80; *Pouder* v. *Tate* (1892), 132 Ind. 327; *Niagara Oil Co.* v. *Jackson* (1910), 48 Ind. App. 238; *Schmoe* v. *Cotton* (1906), 167 Ind. 364; §408 Burns 1914, §399 R. S. 1881.

The complaint on the former appeal, as heretofore indicated, proceeded upon the theory of a permanent injury to the land, while the present complaint, in so far as it involved the land, was limited to compensation for the loss of rents and profits, and the case was tried upon that theory. The supplemental complaint herein did not introduce new elements of damage, or change the theory of the cause of action set forth in the second paragraph, nor did it purpose to cure any defect therein, but it did bring into the record facts pertaining to the loss of rents and profits from the same

land by reason of the same cause, as also injury to and loss of live stock as the result of oil swallowed in eating grass and drinking water on the land subsequent to the years 1914 and 1915.

This was not a case where specific wrongs proximately caused specific injuries which must be redressed by separate actions, nor is it a case governed by 4. the ordinary rules in purely negligence cases. In the instant case it appears that appellant was engaged in a lawful business (Acts 1891 p. 130, §§5148-5158 Burns 1914) ; that the business was so carelessly and negligently conducted that it became an obstruction to the free use of property and essentially interfered with the comfortable enjoyment of life and property, amounting to a nuisance. §291 Burns 1914, §289 R. S. 1881. Or in other words, the negligent operation of a lawful business resulted in creating a continuing nuisance (*King-Crowther Corp.* v. *Ashcraft* [1916], 60 Ind. App. 412), and this action was for damages on account of the nuisance and not for damages on account of negligence, or we may say, it was based upon the wrongful act in creating or maintaining a continuous menace to the free use and comfortable enjoyment of property. Hence, we hold that the principles of law applicable to nuisance cases should govern, rather than those ruling negligence cases. The question then whether the wrongdoer was careful or negligent in the manner of maintaining the nuisance is immaterial. *Niagara Oil Co.* v. *Ogle* (1912), 177 Ind. 292, 42 L. R. A. (N. S.) 714; *Ohio Oil Co.* v. *Westfall* (1909), 43 Ind. App. 661; *Hogle* v. *H. H. Franklin Mfg. Co.* (1907), 105 N. Y. Supp. 1094.

The two pleadings formed the complaint upon which the trial was had. This .complaint tendered the issue of appellee's damage on account of live stock, and the depreciation in the rental value of certain of his lands,

covering a period of six years. Or, we may say, the supplemental complaint was an additional statement of facts to those in the second paragraph, pertaining to injuries proximately caused by the same nuisance up to the time of filing that pleading. That is to say, the relief sought was only enlarged. *Pouder* v. *Tate, supra; Childs* v. *Kansas, etc., R. Co.* (1893), 117 Mo. 414, 437, 23 S. W. 373; *Foote* v. *Burlington Gaslight Co.* (1897), 103 Iowa 576, 72 N. W. 755.

The negligence of appellant in opening its pipe lines in 1914 without making provision to control the oil which might thereby escape, and also its negligence in failing to maintain its lines against leaks during the years 1914 and 1915, and in permitting the oil to escape from its possession, as alleged in the second paragraph, supplemented by facts showing a continuation of the same negligence as to the same matters with the same continuing results until March 1, 1920, charges the maintenance of a continuing nuisance. *Lamming* v. *Galusha* (1892), 135 N. Y. 239, 244, 31 N. E. 1024; *McNulty* v. *Ludwig & Co.* (1912), 138 N. Y. Supp. 84, 153 App. Div. 206.

On the former appeal it was said, p. 403: "Successive actions may be maintained so long as the nuisance is permitted to continue, in which damages may be recovered for all injury occasioned prior to the commencement of the action and within the statute of limitations, not extending back of a former recovery. The measure of damages in such a case is the depreciation in the rental value of the real estate affected." While this language must be measured by the case then before the court, and is not necessarily controlling where the relief is sought upon a different theory, yet we regard the principle therein recognized, of allowing compensation for the damage done during the time "the nuisance is permitted to continue," as hav-

ing an important bearing upon the question now being considered. The words "successive actions" were evidently used in view of the pleaded facts impelling the thought of a continued abatable nuisance rather than a permanent injury to the land. They should not be construed to mean that separate actions must be brought for the loss occasioned by the diminution of rental value for each year, but that when the nuisance is a continuing abatable one, an action prosecuted to a finality will not bar another action to recover the loss of rents for succeeding years, when it is made to appear that the nuisance has not been abated and its continuance has resulted in further injury. This rule rests upon the theory that the law will presume that when the cause of the injury is removed, the injurious consequences will cease (*Southern R. Co.* v. *Poetker* [1910], 46 Ind. App. 295), and that actions of this character should be limited to damages actually accrued or sustained during a continuation of such nuisance, thus obviating any opportunity for including speculative or prospective damages.

The second paragraph, alleging depreciation in rental value, injury and death of live stock during the years 1914 and 1915, and other facts pertaining to those years, supplemented by facts showing that the cause of the injury had not been removed nor had its injurious consequences ceased, was effective to rebut the suggested presumption of law.

In *Schmoe* v. *Cotton, supra,* it was said: "A consideration in favor of granting leave to file a supplemental complaint is that the law does not favor a multiplicity of suits, and that where all matters in controversy may be fairly ended in one action this should be done." This statement of the law, and the ruling announced in *Niagara Oil Co.* v. *Jackson, supra,* are against appellant's contention, and, as we are at present

advised, these authorities sustain the three rulings of the trial court here challenged and considered. See also, *Foote* v. *Burlington Gaslight Co.; supra; Childs* v. *Kansas, etc., R. Co., supra.*

Appellant, in support of its motion for a new trial, insists that the court erred in refusing to give to the jury certain instructions requested by it, in giving certain instructions upon its own motion, insufficient evidence to sustain the verdict, and misconduct of counsel for appellee.

Considering these causes in the order above stated, it will be noted that instructions Nos. 18, 19, 20, 22, 36, and 37, requested by appellant, present the same question as did the rulings of the court pertaining to the supplemental complaint. The trial court was right in refusing these instructions.

Appellant's requested instructions Nos. 11, 12, and 13, and by the trial court refused, were on the subject of nonliability unless the injury was of such character and consequence as to have been reasonably foreseen and anticipated. The general subject of these instructions was fully covered by instruction No. 10 given by the court upon its own motion, as follows: "Although you may believe from the evidence that the defendant was guilty of the negligence charged in the complaint, still, if you further believe from the evidence that such injury was not the natural result of the acts of the defendant and could not have been foreseen or reasonably expected to result from the conduct of the defendant, then the defendant would not be liable, but it is an elementary principle of law, applicable in all cases, that all persons are presumed to have intended the natural consequences of their acts, and this rule is applicable to corporations the same as to natural persons. If you find in this case that the natural result of oil escaping from the defendant's pipes

into Pine Creek would be that it would flow down, or in case of heavy rains would be washed down onto the plaintiff's lands, and as a consequence injure their fertility, the defendant would be liable for the consequences of such injury if it negligently permitted the oil to escape as alleged in the plaintiff's complaint, and it would not be a defense that the defendant had acquired the right from the State to lay its pipes and carry on its operations of pumping oil through them." The refusal to give requested instructions will not be considered as reversible error when they are substantially embodied in those given. *Ginn* v. *State* (1903), 161 Ind. 292; *Rains* v. *State* (1894), 137 Ind. 83; *Williamson* v. *Yingling* (1881), 80 Ind. 379; *Pittsburgh, etc., R. Co.* v. *Broderick* (1913), 56 Ind. App. 58.

There was much evidence before the jury to the effect that crude petroleum oil will destroy vegetable and animal life; furthermore, that appellant knew of these dangers and at times, by means of pits, it endeavored to collect and burn the oil which had leaked from its pipe lines. From the point of location of appellant's leaky pipe lines the watershed was toward appellee's land situate in the Kankakee river bottom about five miles to the north and west of the various leaks in the line, and from the point where the line was severed to permit a dredging machine to pass through. Moreover, appellant permitted pools of oil to accumulate upon its right of way which, during the high water seasons of the year, was floated into the ditches constructed and in course of construction, and thence down to and over appellee's land.

In speaking of the proximate cause of an injury, it is said in *Rock Oil Co.* v. *Brumbaugh* (1915), 59 Ind. App. 640, 650: "The test is to be found in the injurious consequences that might reasonably be anticipated, and not in the number of subsequent events or

agencies that might intervene or concur in bringing about such consequences. The particular or actual consequences need not be anticipated. *Cincinnati, etc., R. Co.* v. *Armuth* (1913), 180 Ind. 673, 677, 103 N. E. 738, and cases cited." Furthermore, referring to the case of *Fletcher* v. *Rylands* (1866), L. R. 1 Exch. *265, *278, it is said, "that the person who for his own purposes brings on his lands and collects and keeps there anything likely to do mischief if it escapes, must keep it at his peril, and if he does not do so, is prima facie answerable for all the damage which is the natural consequence of its escape."

Appellant's requested instruction No. 15 refused by the court was to the effect that if appellee knew the harm that would result from drinking crude oil and he neglected to use reasonable care to keep his stock away from it, he cannot recover from defendant in this action for injury to such stock. Appellant insists that inasmuch as one of the large elements of damages claimed was for the loss of live stock, it was error to deny its request for an instruction that appellee was not entitled to damages for loss of live stock after he knew of the injurious effects of the oil and failed to take steps to prevent such loss. Citing, *Louisville, etc., R. Co.* v. *Falvey* (1886), 104 Ind. 409; *Southern R. Co.* v. *Poetker, supra;* and *Cromer* v. *City of Logansport* (1906), 38 Ind. App. 661.

Generally speaking, it is true that a party injured through the negligence of another must exercise reasonable care to minimize his damages, and his failure so to do is a matter in mitigation. This was the rule followed in the cases cited. However, the instruction under consideration covered the entire damages for injury to live stock. It would have told the jury that, "If the plaintiff knew that his live stock would be poisoned from drinking crude oil which the defendant had

carelessly and negligently allowed to escape from its pipe lines * * * then the plaintiff cannot recover in this action from the defendant for injuries to his said live stock, and as to his said live stock your verdict should be for the defendant." This instruction was not clearly limited to the evidence. It was not made to apply to live stock damaged or killed because of appellee's neglect after he knew of the dangerous effect of the oil, as appellant here contends.

In *Niagara Oil Co.* v. *Ogle, supra,* the court, after stating the contention of appellant that, "it was appellee's duty to prevent, if possible, or, in any event, to reduce to the lowest minimum, the damages to his land and crops," then quoted with apparent approval from Wood, Nuisances (3d ed.) §435: "It is the duty of every person or public body to prevent a nuisance, and the fact that the person injured could, but does not, prevent damages to his property therefrom is no defense either to an action at law or in equity. A party is not bound to expend a dollar, or to do any act to secure for himself the exercise or enjoyment of a legal right of which he is deprived by reason of the wrongful acts of another." See, also, same author §844; and *American Smelting & R. Co.* v. *Riverside Dairy & Stock Farm* (1916), 236 Fed. 510, 149 C. C. A. 562.

In this connection we may call attention to instructions Nos. 14 and 30 requested by appellant and refused, which presented the question of contributory negligence as a defense. No. 14 was drawn with the thought of negligence as the gist of the action, and required appellee to show "by a preponderance of the evidence that the alleged injury to his said property was not caused by his own carelessness or negligence or lack of ordinary care on his part" before he would be entitled to recover. No. 30 would deny a recovery by appellee if he, by his acts, aided and contributed to the injury to

the rental value and to the diminution thereof, and to the injury to his live stock.

There is no evidence that we can find tending to show that appellee knew anything about the effect of drinking crude oil by live stock until after two of his horses and 135 or 140 head of his cattle had drunk of the oil and became poisoned and sick. However, there is evidence that from drinking the oil-covered water and eating the oil-covered grass in 1914, the two horses and nine of the cattle died in 1914, ten in 1915, forty-one in 1916, fifteen in 1917, twelve in 1918 and eight in 1919, a total of ninety-five. No other horses or cattle are involved in this case. On the subject of minimizing damages it appears that appellee employed a veterinarian to treat his stock as soon as he learned of their sick condition, but regardless of his efforts to cure them they became emaciated, lingered and finally died as above stated.

Conceding that the second paragraph of the complaint filed March 1, 1920, related back to the complaint filed September 25, 1916, then looking to the evidence relative to injury and compensation therefor for the years 1914 and 1915, we find evidence tending to prove a loss of rental value on account of the overflowed land for the years 1914 and 1915 of $11,560, and for stock which actually died in those years, amounting to $2,110, aggregating $13,670; or if the damages be confined to the year 1914, as claimed by appellant, then the loss of rental value of the land would be $5,610, plus the damages, $8,950, on account of horses and cattle—dead and sick—aggregating $14,560.

This case was tried in April, 1920, and any evidence pertaining to the cattle said to have been injured in 1914 relative to their recovery or want of recovery prior to the trial, was competent as bearing upon the measure of damages, whether the

facts be pleaded by way of supplemental complaint or not. However, the better practice would seem to require that the facts indicating the complainant's intentions to offer evidence in support thereof, be brought into the record by a supplemental complaint.

The verdict, as we have seen, was for $10,000, which was less than the two years proved loss of rental value of the land, and but little more than the damages to the live stock for the year 1914. But appellant insists that the jury should have been limited to the damages for two head of horses, $400, and six head of cattle, $540, and for loss of blue stem hay prior to the time the action was begun, in all, $4,642.50. This calculation does not take into consideration the rental value of 190 acres of tillable land which, on account of the oil, did not produce anything for the years 1914 and 1915, and shown by the evidence to be of the fair average rental value of $16 per acre. Appellant's insistence in this respect is unreasonable, unwarranted and cannot be sustained from any point of view.

If, for the purposes of the argument only, it be conceded that no error would have been committed by giving the three requested instructions last mentioned, yet it does not necessarily follow that the refusal to give them constituted reversible error. The giving of an erroneous instruction is presumed to be harmful unless the record affirmatively shows that it was not, but the refusal to give an instruction may or may not be harmful. Hence, one who asserts error on such refusal cannot rely upon such assertion, but must go farther in this respect and show that such refusal was harmful, for unless harm resulted to the complaining party, there would be no foundation for complaint.

Space will not permit us to summarize the evidence, covering 4,000 pages of the transcript, and, to narrate,

required 837 pages of appellant's printed brief. However, we have taken the time to read and consider the evidence in detail, and have reached the conclusion that a verdict for a larger amount would have been well supported, even though we exclude the value of 134 head of sheep which died in 1918 and 1919, and the rental value of the land after 1915. Had the jury given full credit to the evidence bearing on the question of the value of live stock killed by drinking the crude oil, and the evidence pertaining to the diminution of the rental value of the real estate covering the six year period included in the issues, it might have reasonably assessed appellee's damages on account of injury to live stock in the sum of $11,630, and loss of rental value of the real estate, $38,980, aggregating $50,610. We can account for the $10,000 verdict only upon the supposition that the jury confined itself to the evidence discounted relative to the injuries sustained by appellee for the years 1914 and 1915.

Appellant's requested instructions here especially mentioned, and others unnecessary for us to take the time and space to consider separately if strictly followed by the jury, could not have reduced the amount of the verdict.

Instructions Nos. 16 and 17, given to the jury by the court upon its own motion, authorized the jury to assess damages for the live stock killed by drinking oil, and for the reduction of the fair cash annual rental value of the real estate, if any, on account of the injuries caused by the spread of the oil which appellant negligently permitted to escape from its pipes. Appellant's objection to these instructions is largely upon the ground that the "complaint and supplemental complaint charges negligence from an abatable nuisance and continuance will not be presumed," and for the further reason that there is no evidence tending to show any

escape of oil which reached appellant's land after the years 1914 and 1915. Appellant is in error in saying that there is no evidence of any escaping oil from its pipes after 1914 and 1915, and that no oil floated down over appellee's land after these years. Referring to the charge of negligence, it is enough to say that the amount of appellee's recovery, as we have seen, depends upon the injury occasioned by the nuisance resulting from appellant's negligence.

The business of appellant of transporting oil through pipes across this state has legislative approval, but a lawful business negligently conducted is not a 15. lawful business lawfully conducted. *Foor* v. *Edwards* (1910), 45 Ind. App. 259; *Dunsbach.* v. *Hollister* (1888), 49 Hun. 352, 2 N. Y. Supp. 94; *Louisville, etc., R. Co.* v. *Commonwealth* (1914), 158 Ky. 773, 106 S. W. 237.

"The wants of mankind demand that property be put to many and various uses and employments, and one may have, upon his property, any kind of lawful business, and so long as it is not a nuisance, and is not managed so as to become such, he is not responsible for any damage that his neighbor accidentally and unavoidably sustains. * * * But where the damage is the necessary consequence of just what the defendant is doing, or is incident to the business itself, *or the manner in which it is conducted* (our italics), the law of negligence has no application and the law of nuisance applies." *Bohan* v. *Port Jervis Gas Light Co.* (1890), 122 N. Y. 18, 25, 25 N. E. 246, 9 L. R. A. 711; Joyce, Nuisances §§18, 92.

Appellant questions the sufficiency of the evidence to sustain the verdict. In deciding other questions presented, we have indicated our opinion on the sufficiency of the evidence in that respect. Upon a further examination of it in this connection, we find that appellant's

insistence is largely based upon its conclusions drawn from the evidence rather than no evidence to support any particular element essential to the verdict. We are also well satisfied from the evidence that it would be unreasonable to suppose that a jury of twelve men could be found that would give a smaller verdict under the obvious showing here made.

Alleged misconduct of counsel for appellee is assigned as the eleventh and twelfth causes for a new trial. The first controversy arose over the offer to introduce a certain map in evidence showing a certain tract of appellee's land as eighty acres, while deeds had been introduced showing that it contained ninety-two acres. In objecting to the introduction of the map, one of appellee's counsel, in the presence of the jury, and while the witness who made the map was on the stand, in effect, stated that the witness was willing to perjure himself by saying the map was correct when he knew it was not correct and couldn't know anything else from his testimony, as his records would show, but he was not willing to produce them. Appellant's counsel objected to these remarks and requested the court to instruct the jury that they were improper and "to cause the remarks to be withdrawn." Thereupon, counsel for appellee said: "I will withdraw them myself." The court then remarked: "Let the remarks be withdrawn."

Second: While another witness was on the witness stand for appellant and was being questioned as to the height oats would grow "if. planted in this soil," answered: "Oh, I hardly know. It would be a stunted growth, but if it made its full growth, if it made rather a good growth, due to a rainy season, it would probably not fill out well with the seed." Attorney for appellee then moved to strike out the answer as not responsive to the question, saying: "He was asked how tall the

oats would grow and he said he didn't know. Then he gave us a lecture on probabilities and possibilities." Counsel for appellant objected to these remarks, and the court said: "Let it stand."

Other remarks were made by counsel for appellee, to which objections were interposed. In each instance appellant requested the court to discharge the jury. These requests were overruled, the court finally saying to counsel for appellant: "Go ahead."

Speaking to the subject of misconduct, counsel for appellant say: "In one instance, perjury is directly charged on the trial, in the examination of a witness, without the least reason or justification. In the other the remarks were belittling and slurring and calculated to prejudice and divert the minds of the jury from the issue, and it was not sufficient that the court should give it no more attention than to say: 'The jury has been instructed two or three times to disregard counsel's statements.' There was a specific objection, and request for specific direction to the jury."

Judging from the record, the trial of this case was vigorously contested, and counsel for appellee, at the times mentioned, seems to have lost his better judgment. While we cannot approve such conduct on the part of counsel, yet these are matters which must, to a great extent, be left to the sound discretion of the trial court. This court is not in a position, as is the trial court, to observe the entire staging of such performances, or to measure the effect thereof. Hence, we should not interfere with the final result of the trial because of misconduct of counsel, unless from the entire record we can say that the alleged misconduct was harmful to the complaining party in that it was probably the means of securing a wrong verdict. *Cleveland, etc., R. Co.* v. *Markle* (1918), 187 Ind. 553; *Roose*

v. *Roose* (1896), 145 Ind. 162; *Adams* v. *State* (1912), 179 Ind. 44; *Kokomo Steel, etc., Co.* v. *Macomber, etc., Co.* (1920), 73 Ind. App. 619.

In our opinion, the record in this case would not justify this court in disturbing the judgment.

Judgment affirmed.

Ewbank, C. J., dissents.

Travis, J., not participating.