In re Harry Dewar.

November Term, 1929.

Present: Watson, C. J., Powers, Slack, Moulton, and Willcox, JJ.

Opinion filed January 14, 1930.

*Gelsie Monti* for the petitioner.

*Cornelius O. Granai,* State's attorney, for the State.

344

POWERS, J. The petitioner was convicted of intoxication before a justice of the peace. Thereupon, he was duly sworn and required to disclose the person of whom he obtained the liquor which produced such intoxication. He refused to do so on the ground that it would tend to criminate him. He was adjudged to be in contempt, and was committed to jail. He then brought these *habeas corpus* proceedings, which were duly adjourned into this Court agreeably to the provisions of G. L. 2221. The importance of the question here submitted for our determination is obvious. On the one hand, a nullification of No. 203, Acts of 1921, which specifically requires a disclosure from all persons convicted of intoxication, will seriously embarrass the enforcement of the liquor law; on the other hand, a denial of the immunity from self-incrimination with which every person is clothed by the Constitution, is not to be tolerated. If the act referred to results in such denial, it is void, and there is nothing for this Court to do but so declare and thus give vitality and effect to the fundamental law, however much the administration of the criminal laws may be thereby impeded.

The validity of the petitioner's commitment depends upon the authority of the court which ordered it; and having resorted to *habeas corpus* proceedings, the petitioner only challenges the jurisdiction of that court to send him to jail. For, while the writ here asked for is not in the nature of, nor can it be used as a substitute for, a bill of exceptions or writ of error, *In re Hook*, 95 Vt. 497, 503, 115 Atl. 730, 19 A. L. R. 610, it affords an appropriate means of attacking the jurisdiction of a court, not only its jurisdiction over the person or the subject-matter, but its jurisdiction to make the very order

or render the particular judgment called in question. So if it turns out that the statute under which the justice of the peace ordered the petitioner to disclose is in conflict with constitutional provisions, he was wholly without jurisdiction to demand the testimony sought, or to make the order of commitment. In that case, the order was not merely erroneous, it was illegal and void, and could not be the basis of a lawful imprisonment; and it would be the duty of this Court, in these proceedings, to set the prisoner free, though we thereby exercise a jurisdiction more or less appellate in character. *In re Hook, supra; In re Dawley*, 99 Vt. 306, 314, 131 Atl. 847; *Ex parte Siebold,* 100 U. S. 371, 25 L. ed. 717.

The provision invoked for the protection of the prisoner is found in Article 10 of our Bill of Rights: ''Nor can he be compelled to give evidence against himself.'' This simple declaration of ten words embodies a safeguard of civil liberty as sacred and inviolable as any of the fundamental guaranties for the protection of personal rights. *People* v. *Forbes,* 143 N. Y. 219, 38 N. E. 303, 305. Similar provisions are to be found in nearly every state Constitution and in the Constitution of the United States. All agree that they are of first importance and should be applied in a broad and liberal spirit to the end that the individual shall enjoy that complete immunity therein contemplated. *People* v. *Newmark,* 312 Ill. 625, 144 N. E. 338, 340; *Ward* v. *State,* 27 Okla. Cr. App. 362, 228 Pac. 498; *People* v. *Spain,* 307 Ill. 283, 138 N. E. 614, 617; *In re Beer,* 17 N. D. 184, 115 N. W. 672, 17 Ann. Cas. 126, 127; *Arndstein* v. *McCarthy,* 254 U. S. 71, 65 L. ed. 138, 142, 41 Sup. Ct. 26; *People* v. *Forbes,* 143 N. Y. 219, 38 N. E. 303, 305; Ex *Parte Senior,* 37 Fla. 1, 19 So. 652, 32 L. R. A. 133, 135; *People* v. *Reardon,* 124 App. Div. 818, 109 N. Y. S. 504, 508; *Counselman* v. *Hitchcock,* 142 U. S. 547, 35 L. ed. 1110.

Whatever the rule formerly may have been in this country or elsewhere, it is now fully established that it is not left to the witness, exclusively, to say when he is entitled to the privilege of silence. The right of the state or of individuals to have the benefit of the testimony of every person having relevant knowledge is not to be disregarded to that extent, nor are the enforcement and administration of the laws to be so unduly embarrassed. The ultimate decision of the witness' right to refuse to testify, is for the court. *State* v. *Wood,* 99

Vt. 490, 492, 134 Atl. 697, 48 A. L. R. 985. But where, as here, no issue of fact is involved, the question which the court is required to pass upon is one of law, the decision of which must accord with established rules.

The law governing such cases was laid down by Chief Justice Marshall in the trial of Aaron Burr, 1 Burr's Trial, 244, Fed. Cas. No. 14692e, wherein the great expounder used the following language: "When a question is propounded (a question which the witness declines to answer upon the ground that it may tend to criminate him), it belongs to the court to consider and to decide whether any direct answer to it can implicate the witness. If this be decided in the negative, then he may answer it without violating the privilege which is secured to him by law. If a direct answer to it may criminate himself, then he must be the sole judge what his answer would be. The court cannot participate with him in this judgment, because they cannot decide on the effect of his answer without knowing what it would be; and a disclosure of that fact to the judges would strip him of the privilege which the law allows, and which he claims. It follows necessarily, then, from this statement of things, that, if the question be of such a description that an answer may or may not criminate the witness, according to the purport of that answer, it must rest with himself, who alone can tell what it would be, to answer the question or not. If, in such a case, he say upon his oath that his answer would criminate himself, the court can demand no other testimony of the fact." This doctrine was adhered to in *Counselman* v. *Hitchcock,* 142 U. S. 547, 35 L. ed. 1110, 1115, 12 Sup. Ct. 195, and *Mason* v. *United States,* 244 U. S. 362, 61 L. ed. 1198, 1199, 37 Sup. Ct. 621.

We are here, of course, dealing solely with a provision of our own Constitution, the corresponding clause of the Federal Constitution not being applicable. *State* v. *Felch,* 92 Vt. 477, 483, 105 Atl. 23; *Twining* v. *New Jersey,* 211 U. S. 78, 53 L. ed. 97, 103, 29 Sup. Ct. 14, but the language of the Fifth Amendment thereto, while it is somewhat variant in terms, is uniform in meaning with the provision of our Constitution herein directly involved. The federal decisions, therefore, are quite in point. The Marshall rule has been approved in and made the basis of many decisions of the state courts. *Ex parte Gauss,* 223 Mo. 277, 122 S. W. 741, 135 A. S. R. 517; *Wilson* v. *Ohio*

*Farmers' Ins. Co.*, 164 Ind. 462, 73 N. E. 892, 893; *People* v. *Danziger*, 238 Mich. 39, 213 N. W. 448, 452, 52 A. L. R. 136; *Ex parte Butt*, 78 Ark. 262, 93 S. W. 992; *Indiana Pipe Line Co.* v. *Christensen*, 188 Ind. 400, 123 N. E. 789, *Id.* 195 Ind. 106, 143 N. E. 596, *Miskimmins* v. *Shaver*, 8 Wyo. 392, 58 Pac. 411, 49 L. R. A. 831, 840; *In re Moser*, 138 Mich. 302, 101 N. W. 588, 5 Ann. Cas. 31, 34, and note; *Kendrick* v. *Com.*, 78 Va. 490, 495; *In re Stewart*, 121 Wash. 429, 436, 209 Pac. 849. See, also, 4 Wig. Ev. (2nd ed.) § 2271, where Professor Wigmore says that Chief Justice Marshall solved the problem in the manner now recognized as sound.

In *State* v. *Thaden*, 43 Minn. 253, 255, 45 N. W. 447, 448, Mr. Justice Mitchell calls attention to the divergent views of the courts on what he says may be spoken of as the "burden of proof," which difference of opinion, he says, is theoretical rather than practical; he then goes on to say that the best practical rule is that to entitle a witness to the privilege, the court must see from the circumstances of the case and the nature of the evidence which he is called upon to give, that there is reasonable ground to apprehend danger to the witness from his being compelled to answer; and that when such apprehension of a real danger appears, inasmuch as the witness alone knows the nature of the answer he would give, he alone must decide whether it would criminate him. And the learned justice adds: "This, we think, is substantially what Chief Justice Marshall meant by his statement of the rule in the Burr trial." This treatment of the subject has Professor Wigmore's complete approval. He says: "This summing up of Mr. Justice Mitchell leaves nothing to be added, and ought to remain the last word in the development of the rule." Wig. Ev. *supra*.

So deep an impression has the Marshall rule made on the appellate judges of the country that Head, J., in *Com.* v. *Bolger*, 229 Pa. 597, 79 Atl. 113, 115, said that this rule has been "so generally adopted that it may now be said to be as universal as the privilege, the nature and scope of which it defines."

We approved the Marshall rule in the *Consolidated Rendering Co. Case*, 80 Vt. 55, 73, 66 Atl. 790, 11 Ann. Cas. 1069, taking it from Rapalje on Witnesses, § 266, with such modification, if any, as was made in *State* v. *Thaden, supra*, which we said, in effect, expressed our rule. We speak of this modification because we suggested in the Rendering Co. Case

that there had been some modification in the Marshall rule as to the right of the witness to judge for himself whether he was entitled to the privilege, citing *Chamberlain* v. *Wilson,* 12 Vt. 491, 36 A. D. 356. In that case, the elder Redfield, speaking for this Court, said of a witness who claims this privilege: ''If he informs the court, upon oath, that he cannot testify without criminating himself, the court cannot compel him to testify, unless they are fully satisfied such is not the fact, *i.e.*, that the witness is either mistaken or acts in bad faith, in either of which cases the court should compel the witness to testify.'' This statement is of especial interest in two respects: First, it obviously puts what Mr. Justice Mitchell speaks of as the ''burden of proof'' on the court; for it requires the court to excuse the witness *unless* it is satisfied, and *fully* satisfied. Second, it brings into the matter the question of the good faith of the witness. This feature of the statement must be accepted with caution. Taken literally it may give a false impression. It is true, of course, that a witness is not to be allowed to defraud the court by asserting a privilege which he knows does not exist, and some of the cases make use of the expression ''purely contumacious'' in connection with this subject. *Wilson* v. *Ohio Farmers' Ins. Co.,* 164 Ind. 462, 73 N. E. 892, 893. Yet, in many cases, the question of the witness' good faith does not enter into the question at all. Where the situation is such that the court should see that any answer reasonably to be expected may definitely tend to expose his criminality, there is no room for inquiring whether the privilege is claimed in good faith. The doubt about the criminating effect, however, may be so great that the motive of the witness may be considered on that question. *Miskimmins* v. *Shaver,* 8 Wyo. 392, 394, 58 Pac. 411, 49 L. R. A. 831; *Ex parte Irvine,* (C. C.), 74 Fed. 954, 964. The opinion in the case last cited is by Chief Justice Taft when he was on the Sixth Circuit. Of the matter of good faith, he says: ''We do not understand any of the American authorities to go so far as to hold that where, from the evidence and the nature of the question, the court can definitely determine that the question, if answered in a particular way, will form a link in the chain of evidence to establish the commission of a crime by the witness, the court should inquire into the motive of the witness in pleading his privilege. It is only where the criminating effect of the question is doubtful that the motive of the wit-

ness may be considered; for in such a case, his bad faith would have a tendency to show that his answer would not subject him to the danger of criminal prosecution or help prove him guilty of crime.''

A simple illustration shows the soundness of this doctrine: Suppose one suspected of murder was called before the grand jury and asked the direct question, ''Did you kill this man?'' Would anybody claim that his motive for claiming his constitutional protection from self-incrimination could be inquired into? Of course not. A fair and convincing statement is found in *Janvrin* v. *Scammon,* 29 N. H. 280, 290, as follows: ''When he places himself upon his privilege, he will be protected, unless the court can see from the circumstances of the case that he is in error, or that it is a mere pretext of the witness to avoid answering, *and* that his answer cannot, from the nature of things, criminate him.''

Tested by the rule in any of its slightly different forms, the case before us is free from difficulty. Nothing could be plainer than that this petitioner could not disclose the facts called for by the justice of the peace without definite and manifest danger of making out his own violation of the criminal law. By the terms of No. 204, Acts of 1921, one cannot, speaking broadly, make, import, transport or possess intoxicating liquor without being subject to the penalties therein provided. It would be extremely difficult for one who is proved to have had enough of such liquor to cause intoxication, to tell a true and believeable story about where it came from that would show that he was wholly clear of the criminal law embodied in this comprehensive statute.

*In re January,* 295 Mo. 653, 246 S. W. 241, is directly in point. There the witness was called before a grand jury and asked if, within a year, he had purchased any intoxicating liquor. He refused to answer, claiming his constitutional privilege of exemption from self-incrimination. He was committed for contempt, and brought up on *habeas corpus.* It was held that inasmuch as the state statute penalized the possession and transportation of intoxicating liquor, except in the private residence of the owner, the answer might constitute a link in the chain of evidence against him for unlawful possession, and he was discharged.

350

■ We hold, then, that the Legislature, in its zeal to make effective the prohibitory features of No. 204, above referred to, went too far when it passed No. 203, and that the latter act is unconstitutional and void. It follows that the petitioner is in unlawful restraint, and he is *discharged therefrom.*